[Crim. No. 21947. Second Dist., Div. Five. Aug. 1, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
GARY ALVIN FINCHUM, Defendant and Respondent.

COUNSEL

Joseph P. Busch, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

McDaniel, Plotkin & Bamber, Barry L. Plotkin and James E. Bamber for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—The defendant, Gary Finchum, was charged with two counts of burglary (Pen. Code, § 459) and with three counts of receiving stolen property (Pen. Code, § 496). Finchum's motion under Penal Code section 1538.5 was granted, and the cause was dismissed pursuant to section 1385 of the Penal Code. The People now appeal.

The facts adduced in connection with the section 1538.5 hearing were as follows: At approximately 1:50 a.m., on December 24, 1971, Deputy Sheriff Cacucciolo arrested the defendant and his companion, Bartholomew, for burglary. During the morning hours of December 24, 1971, Deputy Sheriff Armstrong talked with the defendant in an interview room of the Industry police substation, at which time Armstrong advised the defendant Finchum of his constitutional rights. Finchum stated that he understood them and that he wished to discuss the matter without an attorney. Finchum then denied all involvement in the commission of the crime for which he had been arrested. Sheriff Armstrong testified that he then placed Bartholomew in the interview room with the defendant, and that he "told him [the defendant] I had gotten two stories from each subject, and if I left them together for ten or fifteen minutes, could they get their stories straight, and they indicated they could, and then myself and detective Land and Sergeant Clark went to another room and monitored the conversation." The defendant had not been informed that his conversation with Bartholomew would be monitored. The People conceded that the subsequent activities of the police were dependent upon the information obtained from the monitored conversation, and it was stipulated that the suppression of the overheard conversation rendered the People "unable to justify the seizure of the various items of evidence." No further evidence was presented with regard to the lawfulness of the subsequent search and seizure.

The sole issue before us on this appeal is whether the monitoring of the conversation between the defendant and his companion after they had been taken into custody involved a violation of defendant's Fourth Amendment right of privacy. California cases have uniformly held that persons incarcerated within a jail facility ordinarily have no reasonable expectation of privacy. (See authorities cited in *North* v. *Superior Court,*

8 Cal.3d 301, at pp. 317-318 [104 Cal.Rptr. 833, 502 P.2d 1305] [dissenting opinion of Justice Sullivan]; *Halpin* v. *Superior Court,* 6 Cal.3d 885, 900, fn. 21 [101 Cal.Rptr. 375, 495 P.2d 1295].) ■ "The rationale underlying this general rule is based upon a policy favoring the use by jail authorities of reasonable security measures. 'A man detained in jail cannot reasonably expect to enjoy the privacy afforded to a person in free society. His lack of privacy is a necessary adjunct to his imprisonment. . . .' [Citation.]" (*North* v. *Superior Court, supra,* 8 Cal.3d 301, 309.)

In upholding the admissibility of a transcription of an electronically intercepted jailhouse conversation between petitioner and his brother, an inmate thereof, the United States Supreme Court stated, ". . . it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day. [Fn. omitted.]" (*Lanza* v. *New York,* 370 U.S. 139, 143 [8 L.Ed.2d 384, 388, 82 S.Ct. 1218].)

■ However, as pointed out in *North* v. *Superior Court, supra,* at pages 310-311, there are exceptions to the general rule: it is not applicable to conversations between persons who occupy privileged relationships (i.e., attorney-client, husband-wife, etc.); also, it may not be applicable where the police have represented to an incarcerated defendant that the communication would be confidential (see *People* v. *Blair,* 2 Cal.App.3d 249, 256 [82 Cal.Rptr. 673]); or where the circumstances strongly indicate that the parties "were lulled into believing that their conversation would be confidential." (8 Cal.3d at p. 311.)

■ We must decide whether said police conduct was sufficient to cause defendant to have a reasonable expectation of privacy. *North* v. *Superior Court, supra,* assists in supplying the answer. In that case the conversation monitored was between husband and wife. Detective Neesan surrendered his office to them so that they might converse, then exited and closed the door, leaving them entirely alone. Justice Burke, writing for the majority, states that "[t]he foregoing circumstances, *coupled with the statutory presumption that a conversation between spouses is presumed to have been made in confidence* (Evid. Code, § 917 . . .), constituted a sufficient showing by petitioner to establish a reasonable expectation of privacy." (Italics added.) (8 Cal.3d at p. 312.)

Justice Sullivan pointedly dissented with the majority and stated, inter alia: "The majority's result breaks sharply from a long line of accepted authority holding that persons in custody ordinarily have no reasonable expectation of privacy. [Citations.] . . .

"Measured against an objective standard, I conclude that no reasonable person in defendant's position could have had such an expectation. At the time of the conversation defendant was in custody, charged with the serious crimes of kidnaping and assault with a deadly weapon. He was held in the jail and upon the visit of his wife was brought to the police area in the same building where he spoke with her in a detective's office. Under such circumstances only a fatuous or naive defendant would close his eyes to the realities and assume that he was no longer in custody or under surveillance and that his jail, like his home, had in some unaccountable way become his castle." (8 Cal.3d at pp. 317-319.) Chief Justice Wright and Justice McComb concurred with Justice Sullivan in this phase of his dissent.

In the instant case, the defendant and his companion did not occupy a privileged status. In *North* it was the husband-wife relationship *coupled* with Detective Neesan's conduct that gave rise to the expectation of privacy. Absent the privileged relationship from the *North* case, as we read that case, there would have been no reasonable expectation of privacy.

Here, defendant had been arrested but not yet booked. He was at a police station, in an interview room, not in prison. He was left with his coarrestee, a juvenile, with the statement, "I told him I had gotten two stories from each subject, and if I left them together for ten or fifteen minutes, could they get their stories straight, . . ." The officer concluded that ". . . they indicated they could, . . ." There was no coercion by the police, and defendant had been advised of his *Miranda* rights and had waived them. Defendant knew that anything he said might be used against him. His statements to the coarrestee were of a voluntary nature and were not made during interrogation. His coarrestee was not a person with whom he enjoyed a status of expected confidentiality.

To hold here, as the trial court did, that there was an expectation of privacy in such surroundings, whether officers were visibly present or not, is, to us, unreasonable. Hope would be the *most* that anyone in such a situation could have had, and hope falls far short of what the law recognizes as a reasonable expectation.

The order dismissing the action is reversed; the trial court will set aside the order suppressing evidence.

Kaus, P. J., and Stephens, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 26, 1973.