[Crim. No. 22415. Mar. 24, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
EARL BRADLEY CROWSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz, Deputy State Public Defender, and David W. Guthrie for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUS, J.—On this appeal from a criminal conviction, defendant Earl Bradley Crowson raises two claims of error. First, he contends that the trial court erred

in admitting into evidence a tape recording of his conversation with an accomplice which the police secretly recorded while he and the accomplice were alone in the back seat of a police car shortly after their arrest. Second, he claims that the court improperly increased his sentence under Penal Code section 667.5 on the basis of a prior foreign conviction the elements of which differ from those of the corresponding California felony.

We conclude that the admission of the tape recording was proper, but that the trial court erred in imposing an additional one-year term on the basis of the "foreign" prior in question—a federal conspiracy conviction.

I

On September 15, 1978, at 4:15 p.m., a man appeared at John Tilotta's residence in San Diego and asked about the house next door, which had a "for sale" sign in front of it. Just then the telephone rang. When Tilotta answered the phone, the man broke through the screen door into the house brandishing a handgun. Two others followed. Tilotta dropped the phone and the intruders beat him with their fists and the handgun and demanded money and drugs. They ransacked the house. Tilotta and his girl friend, Susan McClain, were bound with tape; Tilotta was robbed of $400, including $300 in $50 bills, a gold chest, and two handguns.

The person whose phone conversation with Tilotta had been interrupted by the robbery apparently alerted the police and Officer Daniel Schreck and his partner arrived at Tilotta's residence just 30 seconds after the assailants left. They noted the license number of a white Volkswagen that was pulling away, and the car was quickly traced to Ruben Romero. About 5 p.m., Officer Long and his partner arrived at Romero's residence, and a minute later Romero pulled into the driveway at the wheel of the Volkswagen. He was arrested and driven to the central police station. A loaded handgun was found in the front seat of the Volkswagen, and the car was impounded. In a later search of the car, a metal chest was found. The gun and the chest were among the items taken from Tilotta's house during the robbery.

At the station Romero spoke with Officer Long and implicated Crowson in the robbery. Later that night, at 8:45 p.m., police officers took Crowson into custody at the Old Timer Bar, about a 10-minute drive from Tilotta's house. Crowson had approximately $235 on his person, including four $50 bills.

Crowson was taken to the central police station, where he was briefly questioned. He was then placed in a large interview room divided by partitions open at the top, where he was able to hear Romero speaking to a police officer behind a partition. He overheard Romero say that he, Crowson, was the owner of the gun used in the robbery.

Shortly thereafter, Officer Schreck placed Crowson and Romero in the back seat of a police car, telling them that they would be transferred to the county jail. In fact, Schreck hoped that if the two men thought they could not be overheard, they would make incriminating statements.[1] A tape recorder placed in the front seat was activated, and the two men, left alone for 20 or 30 minutes, made several damaging admissions; then they discovered the tape recorder and thereafter made exculpatory statements. Afterwards police transported both men to the county jail in another car.

Thereafter, an information was filed charging Crowson with robbery and burglary while armed with and using a firearm (Pen. Code, §§ 211, 459, 12022, subd. (a), 12022.5).[2] The information also alleged a 1975 federal felony conviction under 21 United States Code section 846 (conspiracy to possess a controlled substance with intent to distribute) for purposes of sentence enhancement under section 667.5, subdivision (b). ██ Just before trial, Crowson stipulated to the prior federal conviction.[3]

At trial, Tilotta identified Crowson as the first man through the screen door. Crowson presented alibi witnesses and testified that on the day of the robbery he was at the Old Timer Bar from 2 or 2:30 in the afternoon until his arrest. A bank employee testified that he had given Crowson a number of $50 bills a few days earlier when he cashed some traveler checks. Over Crowson's objections the jury listened to the tape recording of his police car conversation with Romero.

The jury found Crowson guilty of one count each of robbery and burglary, both offenses committed while armed with a firearm. (§§ 211, 459, 12022, subd. (a).) He received a four-year sentence and one-year enhancements for the firearm allegation (§ 12022, subd. (a)) and for the prior felony conviction (§ 667.5, subd. (b)), for a total prison term of six years.

---

[1]Officer Schreck testified as to his intentions: "Q: And when you set up this tape recording out in the car, what was your purpose in wanting to record their conversation? [¶] A: To see if there was any involvement between the two persons and any particular activity I was interested in. [¶] Q: At that time, you were interested in a robbery that had just taken place on California Street? [¶] A: Yes, the robbery that had just taken place. [¶] Q: You wanted to see if they were going to cop out, admit to each other, talk about it? [¶] A: That was my motive, yes. [¶] . . . [¶] Q: You moved away from the car purposely is that correct? [¶] A: Yes, sir. [¶] Q: Wanting him to go ahead and feel free to talk to Mr. Romero? [¶] A: That was my intent."

[2]Unless otherwise indicated, all statutory references are to the Penal Code.

[3]On this appeal, the People do not contend that Crowson's stipulation bars him from challenging the propriety of the enhancement. Past cases have established that such a stipulation does not preclude a defendant from later demonstrating that the increased punishment which he received is unwarranted because his prior conviction does not fall within the class of convictions for which the statute authorizes such punishment. (See, e.g., In re Finley (1968) 68 Cal.2d 389, 390-391 [66 Cal.Rptr. 733, 438 P.2d 381]; In re McVickers (1946) 29 Cal.2d 264, 270-273 [176 P.2d 40].)

On appeal, Crowson contends (1) that the admission of the secret tape re-cording of his police car conversation with Romero was improper, and (2) that a conviction under 21 United States Code section 846 is not a prior felony within the meaning of section 667.5, since under California law a conviction for conspiracy requires proof of an overt act, whereas no overt act is required under the federal statute. We address each of the contentions in turn.

## II

Crowson contends that the admission of the tape recording violated both his Fifth Amendment rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] and his constitutional right of privacy under article I, section 1 of the California Constitution. In ob-jecting to the admission of this evidence at trial, however, Crowson relied sole-ly on the right of privacy theory and, as the Attorney General points out, a *Miranda* claim may generally not be raised on appeal in the absence of a specific objection on that ground at trial. (See, e.g., *In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296]; *People* v. *Bennett* (1976) 60 Cal.App.3d 112, 116-117 [131 Cal.Rptr. 305].) Although defendant urges the court to reach the *Miranda* issue either by finding that his trial counsel's failure to object was excusable because of a subsequent unforeseeable change in the law (see *People* v. *DeSantiago* (1969) 71 Cal.2d 18, 22-23 [76 Cal.Rptr. 809, 453 P.2d 353]), or, alternatively, by finding that his trial counsel was constitu-tionally ineffective in failing to object on *Miranda* grounds (see *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859]), the record in this case is simply inadequate to determine whether Crowson actually invoked his *Miranda* rights prior to the tape-recorded conversation or whether he knowing-ly and intelligently waived those rights.[4] If Crowson validly waived his rights, of course, *Miranda* would afford him no solace and his counsel's failure to raise the issue would be totally unimpeachable. Because Crowson failed to pur-sue this matter at trial, the People had no reason or opportunity to present evidence on this factual threshold question. Under these circumstances, we conclude that the *Miranda* claim may not be raised for the first time on appeal. Thus, the only issue before us is whether the admission of the tape recording

---

[4]In contending that the record is adequate on this point, defendant relies on the following testimony of Officer Schreck: "Q: Did you talk to Mr. Crowson yourself at the police station? [¶] A: I don't remember what comment or comments I may have made at the time, but I was present after officer Long made the admonishment, and I don't believe Mr. Crowson had anything to say."

While this statement could mean that Crowson had invoked his right to remain silent, it could also mean that he had not refused to talk but had simply not provided the police with any helpful information. In testifying on his own behalf at trial, Crowson was not asked and did not indicate whether or not he had invoked his *Miranda* rights, but he did state that he may have attempted to explain to one of the officers why he was carrying so much cash when he was arrested. Given these ambiguities, we cannot find that the record establishes that Crowson invoked his constitu-tional right to remain silent.

violated defendant's right to privacy under article I, section 1 of the California Constitution.

In the search and seizure context, the article I, section 1 "privacy" clause has never been held to establish a broader protection than that provided by the Fourth Amendment of the United States Constitution or article I, section 13 of the California Constitution. "[T]he search and seizure and privacy protections [are] coextensive when applied to police surveillance in the criminal context." (*People* v. *Owens* (1980) 112 Cal.App.3d 441, 448-449 [169 Cal.Rptr. 359].) "[Article I, section 1, article I, section 13 and the Fourth Amendment] apply only where parties to the [conversation] have a 'reasonable expectation of privacy' with respect to what is said . . . ." (*People* v. *Estrada* (1979) 93 Cal.App.3d 76, 98 [155 Cal.Rptr. 731].)[5]

Therefore, whether Crowson's challenge is based on article I, section 1, article I, section 13, or the Fourth Amendment, the issue is whether he had a reasonable expectation that he could conduct a conversation with a suspected accomplice free of police eavesdropping while under arrest and seated in the back seat of a police car. We conclude that he did not.

Crowson and Romero obviously had a *subjective* expectation of privacy; otherwise they would not have made incriminating statements. The "reasonableness" of Crowson's expectation of privacy, however, is ultimately a matter of common sense and practical judgment. "[T]he expectation [must] be one that society is prepared to recognize as 'reasonable.' " (*Katz* v. *United States* (1967) 389 U.S. 347, 361 [19 L.Ed.2d 576, 588, 88 S.Ct. 507] (Harlan, J., conc.).) Here, Crowson had just been arrested at a neighborhood bar—a most extreme interference with the "right to be left alone"—and remained in the custody of the police on the way to jail. Objectively, he surely had no reason to suspect that his conversation with a suspected accomplice in the back of the police car would be afforded any kind of confidentiality. Under these circumstances, we conclude that Crowson did not have a *reasonable* expectation of privacy.

To our knowledge, every court that has passed on this specific issue has reached the same conclusion. The five California Court of Appeal decisions directly on point flatly hold that an arrested suspect has no reasonable expectation of privacy in the back seat of a police car. (*People* v. *Williams* (1982) 128 Cal.App.3d 981, 985-987 [180 Cal.Rptr. 734]; *People* v. *Jardine* (1981) 116

---

[5]Crowson argues that in *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222] we held that article I, section 1 establishes an expanded right of privacy which may be abridged only where there is a compelling state interest. *White,* however, was not a traditional search and seizure case, but rather involved alleged police surveillance of noncriminal activity on a university campus. In that context, we held that the alleged police conduct implicated First Amendment as well as right to privacy principles.

Cal.App.3d 907, 914 [172 Cal.Rptr. 408]; *People* v. *Newton* (1974) 42 Cal.App.3d 292, 296 [116 Cal.Rptr. 690], cert. den. (1975) 420 U.S. 937 [43 L.Ed.2d 414, 95 S.Ct. 1147]; *People* v. *Todd* (1972) 26 Cal.App.3d 15, 17 [102 Cal.Rptr. 539]; *People* v. *Chandler* (1968) 262 Cal.App.2d 350, 355-356 [68 Cal.Rptr. 645].) And the few out-of-state cases that we have found are in accord. (*Brown* v. *State* (Fla.App. 1977) 349 So.2d 1196, 1197, cert. den. (1978) 434 U.S. 1078 [55 L.Ed.2d 785, 98 S.Ct. 1271]; *Hyland* v. *Wainwright* (Fla.App. 1977) 356 So.2d 14.)

Our conclusion in this regard does not conflict with our recent decision in *DeLancie* v. *Superior Court* (1982) 31 Cal.3d 865 [183 Cal.Rptr. 866, 647 P.2d 142]. In *DeLancie* we held that sections 2600 and 2601 accord prison inmates—and, by necessary implication, jail detainees—a statutory right to privacy in prisons and jails that may not be abridged except "to provide for the reasonable security of the institution . . . and for the reasonable protection of the public." (§ 2600.) *DeLancie*, however, did not involve the rights of arrestees—like Crowson—who are not yet confined in jail, and did not purport to assess an arrestee's reasonable expectations of privacy outside of the jail setting—for example, in the back seat of a police car. In our view, sections 2600 and 2601 simply have no application to this situation.

■ Accordingly, we conclude that the trial court did not err in admitting the tape recording.

### III

■ Crowson also challenges the portion of the judgment which imposes a one-year enhancement under section 667.5, subdivision (b) on the basis of a federal drug conspiracy conviction which he sustained in February 1975. Crowson contends that under the federal drug conspiracy statute, as contrasted with California conspiracy law, the commission of an overt act is not an element of the offense, and he argues that under section 667.5, subdivision (f) enhancement on the basis of a foreign conviction is permissible only when the elements of the foreign crime include all of the elements of the corresponding California felony. In response, the People contend that the commission of an overt act is an element of the federal crime of which Crowson was convicted, and additionally assert that, in any event, the conviction satisfies section 667.5, subdivision (f) because the federal indictment to which Crowson pleaded guilty in fact charged two overt acts. Since Crowson concedes that the enhancement would be valid if commission of an overt act is an element of the federal offense, we turn to that issue first.

Crowson was convicted of violating 21 United States Code section 846, conspiracy to possess a controlled substance with intent to distribute. Unlike our

section 184[6] and the general federal conspiracy statute (18 U.S.C. § 371),[7] 21 United States Code section 846 does not explicitly make commission of an overt act an element of the offense.[8] Although the United States Supreme Court has not yet passed on the point, the overwhelming majority of federal courts of appeals which have addressed the question have concluded that commission of an overt act is not an element of a 21 United States Code section 846 violation. (See, e.g., *United States* v. *DeJesus* (1st Cir. 1975) 520 F.2d 298, 301, cert. den. 423 U.S. 865 [46 L.Ed.2d 94, 96 S.Ct. 126]; *United States* v. *Bermudez* (2d Cir. 1975) 526 F.2d 89, 94; *United States* v. *Dreyer* (3d Cir. 1976) 533 F.2d 112, 117 & fn. 6; *United States* v. *Pringle* (5th Cir. 1978) 576 F.2d 1114, 1120; *United States* v. *Umentum* (7th Cir. 1976) 547 F.2d 987, 989-991, cert. den. 430 U.S. 983 [52 L.Ed.2d 376, 97 S.Ct. 1677].)

The federal circuits, however, are not unanimous in this interpretation of the relevant conspiracy statute (see *United States* v. *King* (10th Cir. 1975) 521 F.2d 61, 63), and the People argue that in the Ninth Circuit, which includes the district court where defendant entered his guilty plea, the commission of an overt act is considered an essential element of a 21 United States Code section 846 offense. A number of Ninth Circuit decisions have—in passing—listed an "overt act" as one of the general elements of a federal drug conspiracy offense. (See, e.g., *United States* v. *Kaiser* (9th Cir. 1981) 660 F.2d 724, 730; *United States* v. *Melchor-Lopez* (9th Cir. 1980) 627 F.2d 886, 890; *United States* v. *Friedman* (9th Cir. 1979) 593 F.2d 109, 115; *United States* v. *Oropeza* (9th Cir. 1977) 564 F.2d 316, 321; *United States* v. *Croxton* (9th Cir. 1973) 482 F.2d 231, 233.) The "overt act" requirement, however, was not at issue in any of these cases and thus the statements on which the People rely are clearly dicta.[9]

---

[6]Section 184 provides: "No agreement amounts to a conspiracy, unless some act, beside such agreement, be done within this state to effect the object thereof, by one or more of the parties to such agreement . . . ."

[7]18 United States Code section 371 provides in relevant part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, *and one or more of such persons do any act to effect the object of the conspiracy,* each shall be fined not more than $10,000 or imprisoned not more than five years, or both." (Italics added.)

[8]21 United States Code section 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

[9]Indeed, in its recent decision in *Melchor-Lopez, supra,* the Ninth Circuit appears to have implicitly acknowledged that proof of an overt act may not be required under the statute. In *Melchor-Lopez,* the court, after concluding that the evidence in that case was insufficient to establish the "agreement" necessary to support a conspiracy conviction, emphasized that its conclusion was particularly warranted "in view of the recent decisions of several circuits eliminating the requirement of proof of an overt act in conspiracy prosecutions." (627 F.2d at p. 892.)

Moreover, there are at least two Ninth Circuit decisions interpreting statutory predecessors to 21 United States Code section 846 which directly hold that an overt act is not a required element of such a specialized conspiracy offense. (See, e.g., *Ewing* v. *United States* (9th Cir. 1967) 386 F.2d 10, 15 (interpreting former 21 U.S.C. § 176a); *Leyvas* v. *United States* (9th Cir. 1967) 371 F.2d 714, 717 & fn. 4 (interpreting former 21 U.S.C. § 174). See also *United States* v. *Gardner* (N.D.Cal. 1962) 202 F.Supp. 256, 257-259.) To our knowledge, there is nothing in the legislative history of the 1970 revision of the federal drug laws—which produced, inter alia, 21 United States Code section 846—that suggests that Congress intended to add a new overt act requirement to the revised federal drug conspiracy provisions (see *United States* v. *DeViteri* (E.D.N.Y. 1972) 350 F.Supp. 550, 552), and cases outside of the Ninth Circuit have relied on the Ninth Circuit's *Ewing* decision in concluding that 21 United States Code section 846 does not require proof of an overt act. (See, e.g., *United States* v. *Bermudez, supra,* 526 F.2d 89, 94; *United States* v. *DeViteri, supra,* 350 F.Supp. 550, 551-552.) The Ninth Circuit itself has never repudiated the *Ewing* or *Leyvas* decisions or their reasoning; the more recent cases, containing the dicta relied on by the People, appear simply to have overlooked these earlier authorities. Under these circumstances, and given the great weight of federal authority on the point, we conclude that the commission of an overt act is not an element of the federal offense of which Crowson was convicted.

Thus, we are faced directly with the question whether the difference in the basic elements of the foreign and California crimes precludes enhancement under section 667.5, subdivision (f). Recent Court of Appeal decisions are divided over the proper application of section 667.5, subdivision (f) when the elements of a foreign crime are not identical to those of the related California felony. One case has held that a court may look only to the elements of the other jurisdiction's crime, and that enhancement is improper whenever those elements do not include all of the elements of the California felony. (*People* v. *Hickey* (1980) 109 Cal.App.3d 426, 438-439 [167 Cal.Rptr. 256].) Other cases have suggested that in some circumstances it is permissible for a court to go beyond the elements of the foreign crime in order to determine whether the defendant's *conduct in the prior incident* would have subjected him to a felony conviction in California. (See, e.g., *People* v. *Roberson* (1978) 81 Cal.App.3d 890, 894-895 [146 Cal.Rptr. 777]; *People* v. *Plies* (1981) 121 Cal.App.3d 676, 678-682 [177 Cal.Rptr. 4]; *People* v. *Cheri* (1981) 127 Cal.App.3d 280, 283-285 [179 Cal.Rptr. 423].) In light of the language of section 667.5, subdivision (f) and past authorities interpreting a related statute, we conclude that enhancement is only permissible when the elements of the foreign crime, as defined by that jurisdiction's statutory or common law, include all of the elements of the California felony.[10]

---

[10]To the extent that they are inconsistent with this conclusion, the Court of Appeal decisions in *Roberson, Plies* and *Cheri* are disapproved.

We begin with the terms of the statute. Section 667.5, subdivision (f), enacted in 1976 as part of the Determinate Sentencing Act, provides in full: "A prior conviction of a felony shall include a conviction in another jurisdiction for an offense which if committed in California is punishable by imprisonment in state prison provided the defendant served one year or more in prison for such offense in the other jurisdiction. A prior conviction of a particular felony shall include a conviction in another jurisdiction *for an offense which includes all of the elements of the particular felony as defined under California law* provided the defendant served one year or more in prison for such offense in the other jurisdiction." (Italics added.)

As the emphasized language indicates, the statute authorizes enhancement for a foreign conviction only when the conviction is "for *an offense* which includes all of the elements" of the California felony. As used in other portions of section 667.5, the term "offense" quite clearly refers to a specific crime *as defined by law,* and not simply to the actual conduct of the defendant.[11] It is, of course, generally "presumed, in the absence of anything in the statute to the contrary, that a repeated phrase or word in a statute is used in the same sense throughout. [Citations.]" (*People* v. *Hernandez* (1981) 30 Cal.3d 462, 468 [179 Cal.Rptr. 239, 637 P.2d 706].) Although this "presumption" of consistent usage will give way in the face of an apparent contrary legislative intent (see *ibid.*), we can find nothing to suggest that the Legislature did not intend the relevant comparison to be between the elements of the foreign and California "offenses," as defined by the applicable statutory or common law.

This interpretation finds support in the cases construing a parallel statutory provision relating to prior foreign convictions, section 668.[12] In *In re Finley* (1968) 68 Cal.2d 389 [66 Cal.Rptr. 733, 438 P.2d 381], Chief Justice Traynor, writing for a unanimous court, reviewed the general principles applicable in determining whether a foreign conviction could be used pursuant to section 668 as a basis for increased punishment under the then-existing habitual criminal law. (Former § 644.) Chief Justice Traynor explained that such a determination "does not [involve] the opening or reopening of questions calling for resolution on the basis of the testimony of witnesses who may have died or disappeared or where memories have faded. . . . The fact that an accused suffered a foreign conviction of a crime is made officially of record at the time and place of such

---

[11]Section 667.5 begins: "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows: (a) *Where one of the new offenses is one of the violent felonies specified in subdivision (c)* . . . the court shall impose a three-year term . . . . (b) Except where subdivision (a) applies, *where the new offense is any felony for which a prison sentence is imposed* . . . the court shall impose a one-year term . . . ." (Italics added.)

[12]Section 668 currently provides: "Every person who has been convicted in any other state, government, country or jurisdiction of an offense for which, if committed within this state, such person could have been punished under the laws of this state by imprisonment in a state prison, is punishable for any subsequent crime committed within this state in the manner prescribed by law and to the same extent as if such prior conviction had taken place in a court of this state."

conviction, and the law of the jurisdiction where he suffered it is judicially noticed. [Citations.] *The least adjudicated elements of the prior conviction remain the same whether it is questioned in the trial court at the time of the determination of habitual criminality or on habeas corpus after such determination becomes final. Neither the People nor the defendant can go behind those adjudicated elements in an attempt to show that he committed a greater, lesser, or different offense.* [Citations.]" (Italics added.) (68 Cal.2d at pp. 392-393. See, e.g., *In re McVickers, supra,* 29 Cal.2d 264, 276.) The Legislature evidently intended to endorse this approach by explicitly incorporating an elements-of-the-offense standard in section 667.5, subdivision (f).

The People contend, however, that even if the propriety of enhancement would ordinarily be controlled by a comparison of the elements of the federal and California offenses, the elements of the federal offense should not be decisive in this case because the indictment to which defendant pleaded guilty specifically alleged two overt acts in support of the conspiracy charge. But if, as we have concluded, proof of an overt act was not a required element of the federal offense, the allegations to which the People refer were entirely immaterial surplusage, and defendant would have had no reason or incentive to contest them in the federal proceeding. In general, the doctrine of collateral estoppel regards as conclusively determined only those issues *actually* and *necessarily* litigated in the prior proceeding (*Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 428-430 [95 Cal.Rptr. 860]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgments, §§ 209, 210, pp. 3348-3349) and the United States Supreme Court has noted that a guilty plea is simply an admission of "all the elements of a formal criminal charge." (*McCarthy* v. *United States* (1969) 394 U.S. 459, 466 [22 L.Ed.2d 418, 425, 89 S.Ct. 1166].) If proof of an overt act was not required to sustain a conviction under the federal statute, neither a guilty verdict after a jury trial nor a plea of guilty may accurately be viewed as establishing that such an act occurred, regardless of the allegations of the charging pleading. As the New York Court of Appeals explained in a related context: "The application of [a statute increasing punishment on the basis of a prior foreign conviction] cannot be made to turn on the expansiveness of the prosecutor who prepared and drafted the indictment in the other State. One prosecutor may content himself with pleading only essential allegations, while another may choose to include immaterial and surplus recitals. Liberty—even of habitual malefactors—is too important to depend upon the drafting technique or the pleading preference of a particular official." (*People* v. *Olah* (1949) 300 N.Y. 96 [89 N.E.2d 329, 332, 19 A.L.R.2d 219]. See also *State* v. *Briton* (1963) 265 Minn. 326 [121 N.W.2d 577, 579]; *State* v. *Grinolds* (1960) 223 Ore. 68 [353 P.2d 851, 853-856].)[13]

---

[13]Although neither party has brought them to our attention, we recognize that a number of California decisions have apparently relied on "surplus" allegations in foreign indictments in

Thus, because the elements of Crowson's federal conspiracy offense did not include all of the elements of the corresponding California felony, we conclude that enhancement is not authorized by section 667.5, subdivision (f).

The judgment is reversed insofar as it imposes a one-year enhancement on the basis of Crowson's 1975 federal conspiracy conviction. In all other respects, the judgment is affirmed.

Mosk, J., concurred.

**BROUSSARD, J.,** Concurring and Dissenting.— **(1b), (2b), (4b), (5b)** I agree with Justice Kaus that the trial court erred in enhancing defendant's sentence because of the federal drug conspiracy conviction. I also join his conclusion that the court did not err in admitting the recording of defendant's conversation with his accomplice in the police car, since at the time of the recording neither California nor federal law recognized any right of privacy in a nonprivileged custodial conversation.

I cannot agree, however, with Justice Kaus' analysis of the admissibility of the recording. He suggests that defendant and Romero, because they knew they were under arrest and the subject of a criminal investigation, could not reasonably expect that their conversation would be private. But when the police set out to create an expectation of privacy by permitting persons to converse in a setting in which their conversation could be overheard only by use of secret microphones or recorders, we should not declare as a matter of law that such expectations are unreasonable. Our recent opinion in *De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865 [183 Cal.Rptr. 866, 647 P.2d 142], rejected the proposition that there can be no reasonable expectation of privacy in a jail. Although *De Lancie* concerned the rights of pretrial detainees, the reasoning of that case necessarily casts doubt upon any parallel rule declaring that arrestees placed in a police car can never reasonably expect privacy, even if the police have deliberately encouraged that expectation.

determining that foreign convictions could be used to increase punishment under the former habitual criminal law. (See, e.g., *In re Bramble* (1947) 31 Cal.2d 43, 53 [187 P.2d 411]; *In re Harincar* (1946) 29 Cal.2d 403, 406-407 [176 P.2d 58]; *In re Taylor* (1944) 64 Cal.App.2d 47, 50 [148 P.2d 143].) Most of the cases involved foreign larceny convictions where allegations in indictments as to the value of goods stolen were considered in determining whether the foreign offense reached the threshold of felony grand theft under California law, and it might be argued that in that context a defendant had some incentive to insure that the allegations were accurate since the value of property stolen might affect his chances for probation or parole. In any event, none of the cases specifically addressed, or even acknowledged, the problems inherent in giving conclusive effect to surplus allegations in an indictment, and the use of such allegations appears quite inconsistent with this court's subsequent statement in *Finly* that "[n]either the People nor the defendant can go behind [the] *adjudicated elements* in an attempt to show that he committed a greater, lesser, or different offense." (Italics added.) (68 Cal.2d at p. 393.) For the reasons discussed in text, we do not believe that such surplus allegations may properly be relied on in applying section 667.5, subdivision (f).

*De Lancie,* however, was decided several months after defendant's trial. At the time of monitoring and trial, *North* v. *Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155] was the leading California authority on admissibility of custodial conversations. *North* held that persons could not reasonably expect privacy in a custodial setting unless (a) the police had lulled them into that expectation, *and* (b) the conversation fell within the marital privilege or some other privilege protected by the Evidence Code.[1] (8 Cal.3d at pp. 311-312; see *People* v. *Finchum* (1973) 33 Cal.App.3d 787, 791 [109 Cal.Rptr. 319].) The Court of Appeal has applied that rule to uphold admission of police car conversations. (See *People* v. *Williams* (1982) 128 Cal.App.3d 981, 985-987 [180 Cal.Rptr. 734]; *People* v. *Jardine* (1981) 116 Cal.App.3d 907, 914 [172 Cal.Rptr. 408].)

While Crowson and Romero may be able to argue that the police led them to expect that their conversation would be private, they cannot claim a relationship protected by any evidentiary privilege. Consequently, under *North* and other pre-*De Lancie* cases, the monitored conversation was admissible. I therefore conclude that the trial court did not err in admitting the challenged evidence.

**RICHARDSON, J.,** Concurring and Dissenting.— I concur with the majority opinion to the extent that it affirms defendant's robbery and burglary convictions. I respectfully dissent, however, from the majority's further conclusion that defendant's sentence may not be enhanced by reason of his prior federal felony conviction.

The obvious purpose of Penal Code section 667.5 is to enhance the terms of recidivist felony offenders; under that provision, offenses committed in other jurisdictions "count" for enhancement purposes if they would be considered felonies in this state. (Subd. (f).) Here, defendant pleaded guilty to a federal drug conspiracy indictment alleging the commission of two overt acts. Would this offense be deemed a felony under California law? It seems to me clear that it would.

The majority speculates that the prior offense might not have involved any overt acts, despite the indictment's contrary allegations. If that were indeed true, why would defendant have entered his guilty plea? As the majority concedes, although some federal cases appear to have dispensed with the overt act requirement, numerous cases from the Ninth Circuit (wherein defendant was charged) strongly suggest that the commission of overt acts remains an essential element of a federal drug conspiracy offense. (*Ante,* p. 631 and cases cited.)

---

[1] The federal rule was at least equally restrictive of custodial privacy rights. (See *Lanza* v. *New York* (1962) 370 U.S. 139, 143-144 [8 L.Ed.2d 384, 387-388, 82 S.Ct. 1218].)

That being so, we may reasonably assume that defendant's guilty plea admitted the overt act allegations.

I would affirm the judgment in its entirety.

**BIRD, C. J.,** Concurring and Dissenting.— I agree that only foreign convictions which include all of the elements of the corresponding California felonies may be used for purposes of sentence enhancement under Penal Code section 667.5, subdivision (f).

However, the clandestine tape recording of appellant's conversation with Romero while the two were alone in the rear seat of the police car violated appellant's constitutional right of privacy. (Cal. Const., art. I, § 1.) In reaching the opposite result, the majority simply assume, without offering any support for their conclusion, that the privacy protections guaranteed by article I, section 1 are coextensive with the search and seizure protections of article I, section 13 or the Fourth Amendment of the United States Constitution.

While the parameters of the constitutional right of privacy are as yet not fully defined, clearly they are broader than the scope of the constitutional protection against unreasonable searches and seizures. This is apparent from the history of the 1972 amendment which specifically added the right of "privacy" to the various "inalienable" rights of "all people" guaranteed by section 1 of article I. (See *White* v. *Davis* (1975) 13 Cal.3d 757, 773 [120 Cal.Rptr. 94, 533 P.2d 222].)

A statement drafted by the proponents of the constitutional amendment was included in the election brochure mailed to all registered voters. (*Id.,* at p. 774.) This statement explained that, "The proliferation of government snooping and data collecting is threatening to destroy our traditional freedoms. . . . [¶] At present there are no effective restraints on the information activities of government and business. This amendment creates a legal and enforceable right of privacy for every Californian." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) p. 26.) The argument in favor of the amendment continued: "The right of privacy is the right to be left alone. It is a fundamental and compelling interest. It protects our homes, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion, and our freedom to associate with the people we choose." (*Id.,* at p. 27.)

Finally, the rebuttal to the argument against the amendment reiterated that, "The right to privacy is *much more than 'unnecessary wordage.'* (*Sic.*) It is fundamental in any free society. *Privacy is not now guaranteed by our State Constitution.*" (*Id.,* at p. 28, italics added.)

Thus, the creation of a specific and independent constitutional right of privacy was intended to be an expansion of those protections already existing under other provisions of the state Constitution. (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 829 [134 Cal.Rptr. 839].) By equating the scope of the right of privacy with the scope of the right to be free from unreasonable searches and seizures, the majority transform the 1972 amendment into "unnecessary wordage" in direct defiance of the provision's expressly declared purpose and the people's will.[1]

The majority's resolution of the privacy issue is also troubling since they fail to find any significance in the deliberately deceptive nature of the police conduct here. Appellant and Romero were ushered into the rear seat of a police cruiser. After closing the doors, the police moved away from the car leaving the two suspects alone for approximately thirty minutes. Although the police made no oral representations concerning confidentiality, their actions spoke as clearly as words. Nothing done by the police indicated that any conversation between appellant and Romero would be monitored. Rather, the police intentionally created the illusion that appellant's conversation with his alleged accomplice would not be overheard. Under these circumstances, the surreptitious tape recording made by the police violated appellant's privacy right.

Finally, any incursion into appellant's right of privacy must be justified by a compelling state interest. (*White* v. *Davis, supra,* 13 Cal.3d at p. 775.) Here, Officer Schreck testified that his purpose in tape-recording the conversation was "[t]o see if there was any involvement" of appellant in the robbery that had just taken place. While such an interest may have been legitimate, it did not provide adequate grounds for the invasion of appellant's privacy. (See *People* v. *Owens* (1980) 112 Cal.App.3d 441, 450-451 [169 Cal.Rptr. 359] (conc. opn. of White, P. J.).) Less intrusive methods for criminal investigation were available to the police and should have been utilized.

Reynoso, J., concurred.

---

[1]The majority appear to confine their holding concerning the scope of the privacy clause to situations involving "'police surveillance in the criminal context.'" (Maj. opn., at p. 629.) Significantly, the ballot argument makes no similar distinction with respect to the parameters of this important constitutional right. Why the additional privacy protections of article I should not apply when one's personal affairs are made the subject of police surveillance is neither explained by the majority nor immediately apparent to the reader.