Filed 4/10/14  P. v. Valenzuela CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MANUEL VALENZUELA,<br><br>    Defendant and Appellant. | B247658<br><br>(Los Angeles County<br>Super. Ct. No. MA057002) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Naranjo, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Appellant Manuel Valenzuela challenges his sentence following his conviction for one count of making criminal threats and one count of assault by means likely to produce great bodily injury with a great bodily injury enhancement. We affirm.

## PROCEDURAL HISTORY

Appellant was charged in an amended information of the following six counts: count one, corporal injury to a spouse/cohabitant/child's parent (Pen. Code, § 273.5, subd. (a))[1]; count two, criminal threats (§ 422, subd. (a)); count three, felon in possession of a firearm with five priors (§ 29800, subd. (a)(1)); count four, possession of ammunition (§ 30305, subd. (a)(1)); count five, assault with a firearm (§ 245, subd. (a)(2)); and count six, assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). For counts one through five, it was alleged pursuant to section 1170.12, subdivisions (a) through (d) and section 667, subdivisions (b) through (i) that appellant suffered two prior serious or violent felony convictions, and pursuant to section 667.5, subdivision (b) that appellant suffered and served a prison term for four prior convictions. For counts one and six, it was alleged appellant personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a). For count five, it was alleged appellant personally used a firearm within the meaning of sections 12022.5, 1192.7, subdivision (c), and 667.5, subdivision (c).

The trial court bifurcated the trial on the priors, and held a jury trial on the counts in the amended information. During trial, the court granted the prosecution's motion to dismiss counts one and five and the accompanying personal use allegation pursuant to section 1385. Appellant also waived his right to a jury trial on the priors. The jury found appellant guilty of counts two and six and not guilty of counts three and four, and found true the allegation in count six that appellant personally inflicted great bodily injury. Appellant waived a bench trial on his priors and admitted them.

The trial court sentenced appellant to a total prison term of 11 years eight months, which consisted of the high term of four years for count six, plus three years for the great

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

bodily injury enhancement, plus one year for each of appellant's four prior convictions, and eight months consecutive for count two (one-third of the midterm of two years). Appellant was awarded custody and conduct credits not at issue here. The court also imposed various fines and fees.[2] Appellant timely appealed.

## STATEMENT OF FACTS

Appellant's conviction arose out of a domestic assault that occurred on June 15, 2012, between him and victim Candace Molina. On that night, Molina went to her apartment manager, Michelle Calzada. Molina was crying and upset, and Calzada saw Molina's face was bleeding and swollen. To Calzada, Molina looked scared. Molina told her, "He beat me up." Calzada called 911.

Los Angeles County Sheriff's Department Deputies Monica Alburez and Brandon Jacobs responded to the 911 call that there was a "273.5," that is, a crime of domestic violence, at Molina's apartment complex, and that the victim was being chased with a firearm. The deputies entered Molina's apartment and found a bag containing a rifle and ammunition on the living room floor.

On the 911 call, Molina said her head hurt and she felt nauseous; she also vomited. She was taken to the hospital by ambulance. While there, she was diagnosed with a

---

**2** Among other fines and fees, the court orally imposed a $50 criminal conviction assessment fee and a $40 court security fee for count six, and a $30 criminal conviction assessment and a $40 court security fee for count two. The sentencing minutes reflected slightly different fees of $40 for the court operations assessment for each count pursuant to section 1465.8, subdivision (a)(1) and $30 for the criminal conviction assessment for each count pursuant to Government Code section 70373. Consistent with the sentencing minutes, the abstract of judgment reflects an $80 court operations assessment and a $60 conviction assessment for both counts under those same code sections. Although the court's oral pronouncement was incorrect, the sentencing minutes and the abstract of judgment were correct, so we need not correct the abstract of judgment. (§ 1465.8, subd. (a)(1) ["To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense," with certain exceptions not pertinent here]; Gov. Code, § 70373 [requiring $30 assessment for each felony "[t]o ensure and maintain adequate funding for court facilities"]; *People v. Sencion* (2012) 211 Cal.App.4th 480, 483-484 [separate fees apply to each count].)

3

broken nose and a facial fracture.  Deputy Alburez spoke with Molina at the hospital and saw she had extreme injuries, including that she was bleeding from her nose, lip, and eyelid; her eye was swollen shut; her mouth was very swollen; and her nose was swollen and tilted to the side.  Molina was crying and complained that her head hurt, but was speaking clearly and able to understand Deputy Alburez.

At the time, Molina told Deputy Alburez she went to a club called Crave that night, and while there she spoke with a man named Fernando.  Appellant was Molina's boyfriend who had just gotten out of prison and was living with her, and he came to the club and saw Molina talking to Fernando, so he hit Fernando and they got into a fight.  Security escorted the men out of the club.  At the same time, Molina went to her car.  Appellant showed up there, told Molina's friend Casey to get out of the car, and got in.  Appellant got into an argument with Molina, punched her in the face several times, and threatened that he would "end her" if she did not drive to her apartment.  She did not want to obey because she feared for her life, but she did so because appellant threatened to kill her if she disobeyed him.  Either on the way to the apartment or at the apartment, appellant told her, "Tonight is the night you're going to die."  Inside the apartment, Molina thought appellant was grabbing for a gun, so she ran to the apartment manager.  Appellant chased her with what she thought was a firearm.  Molina told Deputy Alburez appellant had just been released from prison for domestic violence against her, so she knew what he was capable of doing, and she knew he owned a gun.

Molina eventually recanted this story.  Two or three days later she told Deputy Alburez she had been lying about what happened and she had actually gotten into a fight with a woman in the restroom of the club.  Deputy Alburez asked why Molina changed her story, and Molina said she did not remember what happened.  She also could not remember anything about the woman, or whether she fought back.  Deputy Alburez did not believe Molina's story, so she told Molina to speak with the detective on the case.  In Deputy Alburez's experience, it was not uncommon for domestic violence victims to recant their stories.

4

Molina later spoke with Detective Nelson Rios of the Los Angeles Sheriff's Department, telling him she had gotten into a fight with a woman in the restroom at Crave. She could not provide a description of the woman. She said she did not know why she initially lied about appellant hitting her.

At trial, Molina continued to deny appellant had threatened her or hit her on June 15, 2012. She testified she went to Crave by herself and was drunk and dancing with Fernando when appellant hit him. As appellant was being escorted out of the club, Molina noticed a girl being "real chummy" with him. Molina became irritated and ended up fighting the girl in the bathroom. She drove home by herself, and when she got there and saw her injuries, she went to her manager's apartment and got back at appellant by making up a story about appellant hitting her.

She admitted approximately a year earlier appellant had punched her in the head, which resulted in him pleading guilty to a crime and serving a one-year prison term. Nevertheless, Molina continued to talk to him while he was in prison and they got back together, even though they argue and appellant can be jealous. He was released on June 12, 2012, three days before the assault at issue in this case.

One of the owners of Crave, Dan Baldeo, testified he remembered seeing Molina at the club on June 15, 2012. He testified there was a fight between appellant and Fernando, but no other fights, including any between women. He would have known if a fight took place in the bathroom because bathroom checks were conducted throughout the night. That night there was no evidence a fight took place in the women's bathroom, such as blood on the floor. He also saw no facial injuries on Molina when she was at Crave.

Appellant did not testify, but he called two witnesses. Evelyn Alvarez worked as a hostess on the restaurant side of Crave and as a promoter on the club side. She testified that on June 15, 2012, she saw a "rumble of females fighting" in the parking lot of Crave and they were on top of someone who looked like Molina, although she could not be

5

sure.[3]  She stated there was no way Molina's injuries could have occurred at the club because if they had, she would have known about them because the bouncers would have "been on it."  She had never met appellant.

Casey Loya knew Molina through mutual friends for about five years.  He saw Molina the night of the incident and she appeared to have been drinking.  He testified he was not with her the entire night and did not get into her car at the end of the night, nor did appellant attempt to pull him out of her car.  He did not see her when she left and he did not see her get attacked by appellant or get into a fight with anyone else that night.  He picked Molina up from the hospital the next morning and she looked like she had been in a fight.  Molina told him she had been in a fight with multiple females at the club, and she may have told him the fight occurred in the bathroom.  He knew appellant through Molina and considered him a "gangster."  He did not see appellant at the club that night.

## DISCUSSION

Appellant argues the trial court abused its discretion in sentencing him in two respects.  First, he claims the trial court improperly used the fact that he inflicted great bodily injury on Molina both to impose the upper term of four years on count six and to impose three years for the great bodily injury enhancement pursuant to section 12022.7, subdivision (c).  Second, he claims the trial court erred by failing to state on the record the reasons for running his sentence on count two consecutively to his sentence on count six.

Appellant forfeited both contentions by not raising them at the time of sentencing.  (*People v. Scott* (1994) 9 Cal.4th 331, 353; *People v. Powell* (2011) 194 Cal.App.4th 1268, 1297-1298 (*Powell*) [failure to articulate reasons for consecutive sentence]; *People v. de Soto* (1997) 54 Cal.App.4th 1, 8-9 [dual use of facts to impose upper term and enhancement].)  Recognizing his forfeiture problem, appellant argues his counsel

---

[3]    On cross-examination, she testified she could not be sure she saw this fight on June 15, 2012, and it could have been another day during that summer.

provided ineffective assistance by failing to object. In order to show ineffective assistance of counsel, appellant must show "deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of an adverse effect on the outcome." (*Powell, supra*, at p. 1298, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

## 1. Background

At the sentencing hearing, the prosecutor urged the court to impose the upper term for count six and a consecutive term for count two, pointing out appellant had severely beaten Molina, including breaking her nose, after he forced her to drive to her apartment, all of which occurred within a week of him being let out of prison on a prior domestic violence conviction. He then listed factors in aggravation supporting the upper term for count six: "the crime involved great violence or bodily harm"; the victim was particularly vulnerable, in that she was appellant's girlfriend and "under his power"; and appellant took advantage of his position of trust or confidence to commit the offense. Appellant had also engaged in "prior violent conduct that indicates [he is] a serious danger to the victim as well as society. His prior convictions as an adult are numerous and have increased in seriousness." The prosecutor also noted appellant was on supervised release when he committed the current assault.

In recommending the upper term, the probation report cited appellant's "extensive prior criminal record that dates back to 1999," including two juvenile adjudications for assault with a deadly weapon, two convictions for assault with a deadly weapon as an adult, and two convictions for being a felon in possession of a firearm. The report further noted that three days after being released he "violently attacked his girlfriend." Then he was arrested again in August 2012 for possession of a controlled substance. The probation report concluded, "[o]bviously, the defendant has absolutely no intentions of becoming a law abiding citizen as he continues to commit crimes in the community and continues to inflict emotional and physical pain to his girlfriend and others." It further listed the following specific factors in aggravation: (1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of

7

cruelty, viciousness, or callousness; (2) appellant was armed with or used a weapon at the time of the commission of the crime; (3) the victim was particularly vulnerable; (4) the manner in which the crime was carried out indicates planning, sophistication, or professionalism; (5) appellant took advantage of a position of trust or confidence to commit the offense; (6) appellant has engaged in violent conduct that indicates a serious danger to society; (7) appellant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; (8) appellant has served a prior prison term; and (9) appellant's prior performance on probation or parole was unsatisfactory. The report listed no factors in mitigation.

The trial judge addressed appellant directly before sentencing him. The judge explained he listened to jailhouse recordings of appellant and Molina, and those recordings were "very damning" for appellant. He felt appellant still had manipulative power over Molina "in getting her to do things to a point where, I think, she committed perjury." He also noted appellant's extensive criminal history demonstrated appellant had not "remained custody-free . . . for any length of time." Appellant had an adult criminal history dating back to 2003 and juvenile matters prior to that. And the judge noted appellant had assaulted Molina "within days, weeks at the most of getting out from a previous assault of Ms. Molina."

In pronouncing appellant's sentence, the trial court stated it was imposing the upper term for count six plus four years for the great bodily injury allegation under section 12022.7 "based on the circumstances in aggravation which [the prosecutor] enumerated plus what is in the probation report, balancing that against the circumstances in mitigation, which I don't find any whatsoever." It imposed the sentence on count two as "eight months consecutive" without further explanation.

## 2. *Dual Use of Great Bodily Injury for Upper Term and Enhancement*

Section 1170, subdivision (b) states in pertinent part, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . The court shall select the term which, in the court's discretion, best serves the interests of justice.

The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." Rule 4.420(c) of the California Rules of Court states in turn, "To comply with section 1170(b), a fact charged and found as an enhancement may be used as a reason for imposing the upper term only if the court has discretion to strike the punishment for the enhancement and does so. The use of a fact of an enhancement to impose the upper term of imprisonment is an adequate reason for striking the additional term of imprisonment, regardless of the effect on the total term."

We need not decide whether the trial court violated these provisions by using the fact of great bodily injury to support both the upper term and the great bodily injury enhancement for count six because appellant cannot show prejudice and therefore cannot show ineffective assistance of counsel. "'Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "'"[i]t is not reasonably probable that a more favorable sentence would have been imposed in absence of the error."'" (*People v. Osband* (1996) 13 Cal.4th 622, 728 (*Osband*).)

Because a single factor may justify imposing the upper term (*Osband, supra*, 13 Cal.4th at p. 728), even without the fact of great bodily injury, the trial court's selection of the upper term was well supported by several other significant factors, such as Molina's vulnerability; appellant's power to manipulate her and take advantage of his position of trust with her, so much so she perjured herself for him; his criminal history, which included a prior conviction for domestic violence against Molina; and the fact that the current assault occurred only three days after he was released from prison on the prior domestic violence conviction. Given the severity of Molina's injuries (a broken nose, a facial fracture, bleeding from her nose, lip, and eyelid, an eye was swollen shut, and a swollen mouth) and the seriousness of the other factors the court identified, we have no doubt the trial court would have imposed the great bodily injury enhancement and relied on any one of those other factors to impose the upper term for count six.

### *3. Failure to Explain Consecutive Term*

Section 1170, subdivision (c) requires in relevant part that "[t]he court shall state the reasons for its sentence choice on the record at the time of sentencing." Rule 4.406(a) of the California Rules of Court states, "If the sentencing judge is required to give reasons for a sentence choice, the judge must state in simple language the primary factor or factors that support the exercise of discretion or, if applicable, state that the judge has no discretion. The statement need not be in the language of these rules. It must be delivered orally on the record." Rule 4.406(b)(5) requires the trial court to state reasons for imposing consecutive sentences. And "[a]ny circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences," except, as relevant here, "[a] fact used to impose the upper term" or "[a] fact used to otherwise enhance the defendant's prison sentence." (Cal. Rules of Court, rule 4.425(b)(1)-(2).)

Although the trial court did not explain its reasons for imposing a consecutive sentence for count two at the moment it announced the sentence would be consecutive (and it would have been better practice to do so), it is apparent the trial court relied on the factors listed in the probation report and set forth at the sentencing hearing, which the court thoroughly reviewed just prior to announcing appellant's sentence. Appellant argues if the court did so, then it improperly used the same facts to impose both a consecutive sentence and an upper term. But as with imposing an upper term, a single factor is enough to impose a consecutive sentence, so "the court could have selected disparate facts from among those it recited to justify the imposition of both a consecutive sentence and the upper term." (*Osband, supra*, 13 Cal.4th at pp. 728-729.) Because there were plenty of serious factors in the record to support imposing both an upper term and a consecutive sentence without the trial court having to use any factor twice, we are confident it would have imposed a consecutive sentence for count two based on factors not already used to impose the upper term for count six.

Thus, appellant has demonstrated neither error nor prejudice on this point, so his ineffective assistance of counsel claim fails.[4]

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

---

**4**     Appellant relies on two older cases finding errors from the dual use of facts at sentencing, but neither case addressed whether the defendants were prejudiced by those errors, so we do not find them applicable here. (*People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 821-822 [remanding for resentencing because trial court used same facts for both upper term and consecutive sentence]; *People v. Roberson* (1978) 81 Cal.App.3d 890, 893 [remanding for resentencing because trial court used same fact for both upper term and enhancement], overruled on other grounds by *People v. Crowson* (1983) 33 Cal.3d 623, 632, fn. 10.)