Filed 12/29/15  P. v. Driver CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TOMMY JUNIOR DRIVER II<br><br>        Defendant and Appellant. | E059681<br><br>(Super.Ct.No. FSB1201484)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed.

Helen S. Irza, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Tommy Junior Driver II of possessing cocaine base for sale (Health & Saf. Code, § 11351.5) and found that the offense had been committed for

1

the benefit of a criminal street gang (Pen. Code,[1] § 186.22, subd. (b)(1)).  The jury

acquitted defendant of a separate count of the substantive offense of gang participation

(§ 186.22, subd. (a)), a crime sometimes also called "street terrorism."  (E.g., *People v.

Williams* (2009) 170 Cal.App.4th 587, 625-626 [Fourth Dist., Div. Two].)  The trial court

subsequently found true a prior strike conviction allegation (§ 667, subds. (b)-(i);

§ 1170.12, subds. (a)-(d)) and denied a defense request to strike that strike.  Defendant

received an aggregate sentence of 13 years in prison.

Defendant raises two claims of error on appeal.[2]  First, he argues that the evidence

was insufficient to support the gang enhancement.  Second, he argues that the evidence

was insufficient to establish that his prior conviction was a serious or violent felony

within the meaning of the Three Strikes Law, so as to qualify as a prior strike.  We affirm

the judgment in all respects.

## I. FACTS AND PROCEDURAL BACKGROUND[3]

Defendant was arrested on April 6, 2012, after a police officer discovered rock

cocaine packaged for sale in a foam cup that defendant had been holding.  Plaintiff was

wearing a red belt and a baseball cap with a large letter "P" embroidered on it, clothing

[1] Further undesignated statutory references are to the Penal Code.

[2] Also pending before the court is defendant's petition for writ of habeas corpus
(case No. E063472).  We will rule on that petition by separate order.

[3] An exhaustive factual and procedural history is unnecessary to the disposition of
this appeal.  We therefore limit our discussion in this section to a summary of matters
directly relevant to defendants' contentions on appeal, or helpful as context.  Additional
factual and procedural details will be discussed in later sections as necessary to address
defendant's claims of error.

2

which a police gang expert later testified at trial was indicative of gang membership, specifically, the "Projects" gang. The arresting officers testified at trial that while defendant was being detained, he repeatedly yelled "the Projects got this," or obscene variants of that phrase. An arresting officer testified that when he asked defendant whether he belonged to a criminal street gang, defendant responded that he was a member of the Projects gang. Once defendant was transported to jail, in response to a classification deputy's questioning, defendant stated that he was a member of the "West Side Project Crips," and that he was "Projects until he dies," though he was "too old to gang bang, no longer doing gang stuff." Defendant had previously claimed to be a Projects gang member in jail classification interviews in May 2011, October 2011, and April 2012. He also had admitted Projects gang membership in previous documented contacts with police in November 2006, January 2007, April 2011, and May 2011.

The testifying police gang expert opined that defendant had been arrested in "neutral" territory, not within the territory of the Projects gang. The expert explained, in response to questions based on hypothetical circumstances that mirrored those of this case, that by committing crimes and shouting out their gang's name, gang members "try to intimidate not only the neighborhoods they are in, but the other gang members," and it benefits a criminal street gang when it is feared. By shouting out the gang's name in neutral territory, in particular, gang members indicate that "this is the gang and this is where they are from, and they are taking over this particular area." By doing so in front of police officers, the gang members show other gang members or rivals that they are "not afraid of law enforcement or their status within the gang." Once established in a

3

neighborhood, the gang benefits from citizens being too afraid to report criminal activity by the gang itself. Also, the gang may be able to force others engaging in criminal activity in the area "to pay a tax in order to stay in their neighborhood."

At trial, defendant testified in his own defense. He admitted previously being an "associate" of the Projects gang—meaning that he "hang[s] out" with gang members—though he denied being a member himself, and denied committing crimes for the gang. He claimed that he had been holding the drugs for a friend, known as "Kool-Aid"—a gang member, but not a member of the Projects gang—who was in the area at the time of the arrest. Defendant testified that he had shouted out "I got you." and "I'm Projects" to tell Kool-Aid that, as a person who grew up in San Bernardino low-income housing (known as "the Projects"), he would comply with the code of "the streets" not to "snitch" to the police. He claimed to have been wearing the baseball cap with the letter "P" on it because he likes the baseball team the Philadelphia Phillies, and he likes the color red, though he acknowledged that clothing could identify him as a Projects gang member. He stated that he claimed to be a Projects gang member in jail classification interviews to "be housed with people that [he] knew."

Defendant also testified about his prior convictions, including a prior conviction for grossly negligent discharge of a firearm (§ 246.3.). The following colloquy, relevant to the present appeal, took place on direct examination by defense counsel:

"Q You have a conviction, I believe, for negligent discharge of a firearm; is that right?

"A Yes.

4

"Q  Shot the gun up in the air?

"A  Yes.

"Q  Had a bit too much to drink?

"A  Yes."

## II. DISCUSSION

### A.  Standard of Review.

When a criminal defendant contends the evidence was insufficient to support his conviction, "'"we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]'  . . .  The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."'"  (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)  The standard of review for a challenge to the sufficiency of the evidence to support an enhancement is the same as that for substantive crimes.  (See *People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

### B.  Analysis.

*1.  The Jury's True Finding on the Gang Enhancement Is Supported By Substantial Evidence.*

Defendant contends that the record lacks substantial evidence in support of the jury's true finding with respect to the gang enhancement.  We disagree.

5

Section 186.22, subdivision (b)(1) enhances the punishment for a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) "[T]he gang enhancement under section 186.22[, subdivision] (b)(1) requires both that the felony be gang related and that the defendant act with a specific intent to promote, further, or assist the gang . . . ." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1139.) Expert testimony alone is insufficient to find a drug offense is gang related. (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 931 (*Ferraez*).) Rather, "the record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations . . . ." (*People v. Martinez* (2004) 116 Cal.App.4th 753, 762 (*Martinez*).) Nevertheless, expert testimony is appropriate to provide the jury with information regarding "gang sociology and psychology," including "'whether and how a crime was committed to benefit or promote a gang.'" (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550 (*Gonzalez*).)

Viewed in the light most favorable to the judgment, the evidence supporting the jury's conclusion that defendant possessed drugs for the benefit of[4] the Projects gang, and that he acted with the requisite specific intent to promote, further, or assist the gang, goes well beyond his "record of prior offenses and past gang activities or personal affiliations." (*Martinez*, *supra*, 116 Cal.App.4th at p. 762.) It is also not limited to the

_____

[4] There was no evidence that defendant acted "at the direction of" or directly "in association with" the gang. (§ 186.22, subd. (b)(1).)

6

expert testimony of the testifying police gang expert. (See *Ferraez*, *supra*, 112 Cal.App.4th at p. 931.) As discussed in Part I, *ante*, defendant was arrested wearing gang attire, and as he was being arrested he made statements reasonably understood to announce gang affiliation; these facts are at least circumstantial evidence that his activities immediately prior to his arrest were committed with the requisite specific intent. (See *People v. Rios* (2013) 222 Cal.App.4th 542, 574 [gang clothing, calling out a gang name or otherwise stating gang affiliation, among other things, is evidence supporting inference of specific intent for gang enhancement].) Police expert testimony appropriately provided the jury with information about how defendant's criminal activity, though undertaken in "neutral" territory, could work for the benefit of the Projects gang. (*Gonzalez*, *supra*, 126 Cal.App.4th at p. 1550.) As such, substantial evidence supported the jury's verdict on the gang enhancement.

Defendant's arguments to the contrary falter on the requirement that the evidence be viewed in the light most favorable to the judgment. Even if the evidence might also have supported a different conclusion—the jury could have chosen to believe defendant's trial testimony providing an alternative, somewhat less culpable characterization of his actions, or could have chosen to draw more innocent conclusions from circumstantial evidence—the evidence adduced at trial was more than adequate to support the jury's verdict under the applicable, deferential standard of review.

*2. Substantial Evidence Supports the Trial Court's Finding that Defendant's Prior Conviction Qualifies as a Strike.*

Defendant contends that the evidence before the trial court was insufficient to support its finding that his prior conviction for negligently discharging a firearm (§ 246.3) qualified as a prior strike conviction. Again, we disagree.

A violation of section 246.3 qualifies as a prior serious felony, and thus a strike, where the defendant personally used a firearm. (§ 1192.7, subd. (c)(8) [defining prior "serious felony" to include "any felony in which the defendant personally uses a firearm" to commit the offense].) It is possible, however, to be convicted of violating section 246.3 "without personally using a firearm, e.g., as an aider and abettor." (*People v. Golde* (2008) 163 Cal.App.4th 101, 112.) The prosecution bore the burden of establishing beyond a reasonable doubt not only that defendant was convicted under section 246.3, but also that his conviction was based on personal use of a firearm, for that conviction to count as a serious felony and therefore a strike. In determining whether the prosecution has met this burden, "'the nature of the *conviction* is at issue.'" (*People v. McGee* (2006) 38 Cal.4th 682, 691.)

Here, defendant testified in his own defense, and was questioned on direct examination regarding his prior convictions, including his conviction under section 246.3. In relation to that conviction, defendant's attorney asked him whether he had "[s]hot the gun up in the air"; defendant responded "Yes." The trial court reasonably found that this admission constituted proof beyond a reasonable doubt that defendant's

8

section 246.3 conviction involved defendant personally using a firearm to commit the offense, by "shooting [a gun] off into the air."

Relying primarily on *People v. Trujillo* (2006) 40 Cal.4th 165 (*Trujillo*), defendant argues that the trial court was prohibited from considering the admission defendant made while testifying in the current case. In *Trujillo,* the defendant in a prior proceeding had pleaded guilty to inflicting corporal injury in violation of section 273.5, crime that was not a serious or violent felony. (*Trujillo*, *supra*, at pp. 170-171.) In a postplea probation interview, defendant admitted that he had used a knife to stab the victim, a fact that would elevate the underlying crime to a serious or violent felony. (*Id.* at p. 173.) But the Supreme Court concluded that the defendant's statements did not describe "the nature of the crime of which he was convicted" because, under the terms of the defendant's plea bargain, the prosecution had "dismissed the allegation that defendant used a deadly or dangerous weapon and committed an assault with a deadly weapon." (*Id.* at p. 179.) Under those circumstances, permitting the defendant's statements to be used against him to establish the nature of the conviction would "creat[e] harm akin to double jeopardy and forc[e] the defendant to relitigate the circumstances of the crime." (*Id.* at p. 180.)

The facts of *Trujillo*, however, are distinguishable from the present case. The sworn testimony of defendant in the present case does indeed reflect the facts of the offense for which he was convicted. While the present testimony was not part of the prior proceeding, it nonetheless precisely reflects his prior conviction.

Moreover, *Trujillo* referenced with approval *People v. Reed* (1996) 13 Cal.4th 217 (*Reed*), in which the Supreme Court determined that a reporter's transcript of a

9

preliminary hearing may be relied upon in determining the nature of the defendant's prior conviction for enhancement purposes. (*Trujillo*, *supra*, 40 Cal.4th at p. 177.) In *Reed*, the Supreme Court recognized that the term "record of conviction" could be "used technically, as equivalent to the record on appeal [citation], or more narrowly, as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*Reed*, *supra*, at p. 223.) The reporter's transcript of a preliminary hearing was found to fall "within even the narrower definition because the procedural protections afforded the defendant during a preliminary hearing tend to ensure the reliability of such evidence." (*Ibid.*) The same reasoning applies to a defendant's testimony at trial. Indeed, defendant here not only was represented by counsel, but testified on *direct* examination conducted by defense counsel regarding the facts underlying his conviction for negligent discharge of a firearm.

Similarly, in *People v. Elmore* (1990), 225 Cal.App.3d 953, the Court of Appeal found that a trial court could properly consider the testimony of the defendant elicited on direct examination during trial of the underlying charges for purposes of determining whether the prosecution had met its burden in a subsequent trial regarding enhancement allegations: "To preclude the court from considering evidence properly before it during another part of the trial would be unnecessarily rigid and would hamper, rather than further, the interests of justice." (*Id.* at p. 957.) Although *Elmore* involved a prison prior enhancement, not a strike enhancement, the reasoning is equally applicable here.

In short, we find no error in the trial court's consideration of defendant's trial testimony in determining whether his prior conviction should be treated as a strike.[5]

## III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

      HOLLENHORST

                      Acting P. J.

I concur:

      MCKINSTER

             J.

---

[5] In light of this conclusion, we need not address the parties' arguments regarding the documentary evidence of defendant's prior conviction or defense counsel's admission that the prior conviction counted as a strike, albeit "barely."

11

[*People v. Driver*, E059681]

King, J., Dissenting.

I agree that substantial evidence supports the jury's true finding as to the gang enhancement.

I disagree however, that the trial court could properly use defendant's testimony that "he shot a gun up in the air," for purposes of finding that defendant's prior conviction for negligent discharge of a firearm constituted a serious felony. Defendant's testimony was outside the record of conviction and thus could not be used to determine that he personally used a firearm. (*People v. Trujillo* (2006) 40 Cal.4th 165, 179-180.)

The majority opinion runs counter to over 30 years of California Supreme Court jurisprudence on this issue. Beginning with *People v. Crowson* (1983) 33 Cal.3d 623 and extending through *Trujillo*, the Supreme Court has consistently held that proof as to whether a prior crime is a serious felony for purposes of enhanced sentencing is restricted to the record of the prior conviction. While "the record of conviction" has gradually expanded from documents reflecting the least essential elements of the prior crime, "those issues *actually* and *necessarily* litigated in the prior proceeding" (*People v. Crowson*, *supra*, at p. 634), to an inclusion of the preliminary hearing transcript in the prior proceeding (*People v. Reed* (1996) 13 Cal.4th 217), the Supreme Court has steadfastly held to the notion that only documents generated in the prior proceeding and reflecting the facts of the underlying crime of which defendant was convicted may be used in determining whether the prior crime constituted a serious felony. In discussing

1

*People v. Guerrero* (1988) 44 Cal.3d 343, the court in *Trujillo* stated: "In holding that the trial court 'acted properly' in reviewing the accusatory pleading to determine that the burglary of which the defendant was convicted was a residential burglary and thus a serious felony, we held that in determining the truth of a prior conviction allegation, the trier of fact may 'look beyond the judgment to the entire record of the conviction' [citation] '*but no further*' [citation]." (*People v. Trujillo*, *supra*, 40 Cal.4th at p. 177.)

Restriction to the record of the prior conviction is well grounded. As explained in *People v. Alfaro* (1986) 42 Cal.3d 627:[1] "The virtue of this analysis is that proof of the prior conviction is limited to matters which fall within the doctrine of collateral estoppel and thus cannot be controverted. Proof is simple and conclusive. The contrary view . . . that the [prior serious felony] is conduct which can be proved like any other controverted question of fact—creates obvious difficulties. The prosecution could then introduce documentary and testimonial evidence to show that the prior [crime was a serious felony]; defendant could introduce contrary evidence or argue that the prosecution's evidence does not prove the point beyond a reasonable doubt. The net result would resemble retrial of the original burglary charge." (*People v. Alfaro*, *supra*, at pp. 634-635.)

---

[1] As explained in *Trujillo*: "The holding in *Alfaro* that in determining the truth of an allegation that a defendant had been convicted of a serious felony the trier of fact 'was limited to matters necessarily established by the prior conviction' was short lived. [Citation.] We reconsidered the issue little more that a year later in *People v. Guerrero*[, *supra*,] 44 Cal.3d 343 . . . , overruled our holding in *Alfaro*, and held instead that 'the trier of fact may look to the entire record of the conviction.' [Citation.]" (*People v. Trujillo*, *supra*, 40 Cal.4th at pp. 176-177.)

2

The majority's expansion of what may be used to prove that the prior crime was a serious felony totally destroys the finality of the prior adjudication and allows proof well "beyond the record of conviction." Under our facts, what the majority wishes to consider in establishing that defendant personally used a firearm appears very straightforward and simple. But, as Lee Corso says on Gameday, "[n]ot so fast."

The majority opinion allows a relitigation of whether the prior crime was a serious felony. Under its rationale, the majority would allow a third party to testify at the present proceeding that sometime in the past he or she heard the defendant say that he "shot the gun into the air." Under the majority's rationale, if there was some ambiguity in the record of conviction, both the prosecution and the defense could call witnesses for purposes of establishing or rebutting that the prior crime was a serious felony. The majority's holding simply wipes out the finality of the prior proceeding and well-established law that in determining whether a prior conviction was for a serious felony, the courts may look no further than the prior record of conviction.

KING_____
                              J.

3