[No. H008622. Sixth Dist. Nov. 19, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
CLAUDE HENRI HOPKINS, Defendant and Appellant.

**COUNSEL**

Charles Bush, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and George F. Hindall III, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELIA, J.**—A jury convicted appellant of assault with a firearm (Pen. Code, § 245, subd. (a)(2)),[1] possession of a firearm by an ex-offender (§ 12021.1), and assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)). The jury also found true two allegations of intentional infliction of great bodily injury (§ 12022.7) and an allegation of personal use of a firearm (§ 12022.5, subd. (a)). Appellant then admitted the allegation that he had previously been convicted of rape by force, a serious felony (§§ 667, 1192.7). He was sentenced to serve 10 years in state prison.

Appellant contends the trial court erred by permitting repeated references to his prior conviction as a "violent offense." We agree and reverse with a further discussion for guidance of the trial court on remand.

Prior to trial, appellant stipulated, for purposes of the count charging possession of a firearm by an ex-offender, that he had previously been convicted of rape by force. As to the way in which the jury should be advised of this stipulation, defense counsel agreed that the jury could be told of the prior conviction but argued that it should not be given any information concerning the offense on which the conviction was based. After some

---

[1]All references are to the Penal Code unless otherwise noted.

debate, the trial court agreed with defense counsel and said "Well, at this point my ruling is going to be . . . without prejudice if either counsel present any authority, but at this point my ruling is that if the defendant is prepared to stipulate that he has been convicted of a felony which is specified in section 12021.1 that that is sufficient to constitute, to effectively remove that element from this particular trial and that there does not need to be any reference and there should be no reference to the nature of that particular felony." This ruling was correct.

Count two of the information filed read "On or about October 8, 1989, . . . the crime of POSSESSION OF FIREARM BY ONE PREV. CONVICTED OF VIOLENT OFFENSE in violation of PENAL CODE SECTION 12021.1(A), a FELONY, was committed by [appellant], who having been convicted of an offense enumerated in Section 12021.1(b) of the Penal Code, to wit: RAPE BY FORCE, in violation of Section 261.2 of the PENAL Code . . . did own, and have in his/her possession and under his/her custody and control a firearm, to wit: A HANDGUN." At the start of the trial, the court clerk read aloud to the jury the "title" of the offense charged including the language that appellant had previously been convicted of a violent offense.[2] Defense counsel objected and asked that a mistrial be declared. The trial court denied the motion for mistrial, stating that the reference to the prior violent offense was proper "for purposes of reading the information and stating to the jury what the statute makes criminal." At this point, defense counsel could assume that further objections to references to the nature of the prior offense would be fruitless.

At the end of the prosecution's case-in-chief, the prosecutor read to the jury the following stipulation: "It is stipulated that the defendant was, prior to the date of the offenses charged in the information, convicted of one of the violent offenses enumerated in Penal Code section 12021.1." In instructing the jury at the end of the trial, the trial court reread the portion of the information describing appellant's previous offense as violent. Further references were repeated throughout the instructions.[3] Even the verdict form sent into the jury room contained, in parentheses, the description of the offense given it by the prosecutor: "possession of firearm by one previously convicted of a violent offense."

■    Appellant contends that the trial court committed error when it made and permitted these repeated references to the nature of his prior conviction.

---

[2] The trial court interrupted the reading of the information to delete the reference to "rape by force."

[3] The instruction explaining the proper use of the stipulation contained the offending reference as well.

In support of this contention, he cites *People* v. *Valentine* (1986) 42 Cal.3d 170 [228 Cal.Rptr. 25, 720 P.2d 913]. *Valentine* involved a prosecution for violation of section 12021, possession of a firearm by an ex-felon. The court discussed the impact on such a prosecution of article I, section 28, subdivision (f), of the California Constitution which reads "When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."[4] The court held that this section permits disclosure of stipulated ex-felon status to a jury trying a charge such as violation of section 12021 because such status is an element of the offense. However, it "does not require the nature of prior convictions to go to the jury in such a case, since that information is utterly irrelevant to the charge. Disclosure of the nature of the priors remains error in post-Proposition 8 trials." (42 Cal.3d at pp. 181-182.)

Respondent argues that *Valentine* does not apply, distinguishing a prosecution for violation of section 12021 (possession of a firearm by an ex-felon) from a prosecution for violation of section 12021.1. Section 12021.1, subdivision (a), provides that "any person who has been previously convicted of any of the offenses listed in subdivision (b) and who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony." Subdivision (b) provides "As used in this section, a violent offense includes any of the following" and lists 26 offenses and enhancements. Respondent asserts that both the fact of the prior conviction and its violent nature are relevant to the question of whether appellant violated section 12021.1 and thus "the references to the 'violent' nature of the prior offense were not only permissible, but unavoidable."

The issue is whether the violent nature of the prior offense is an element of possession of a firearm by an ex-offender. If it is, a defendant should be entitled to defeat that element by proof of nonviolent commission of the prior offense. If it is not an element, then the reference is an irrelevant, gratuitous attack on a defendant's character.

The offense defined by section 12021.1 has been titled "possession of a firearm by an ex-felon" (*People* v. *Medina* (1990) 51 Cal.3d 870, 879 [274 Cal.Rptr. 849, 799 P.2d 1282]; *People* v. *Johnson* (1989) 210 Cal.App.3d 316 [258 Cal.Rptr. 347]), "possession of a concealable firearm . . . by a felon" (*People* v. *Scheidt* (1991) 231 Cal.App.3d 162, 164 [282 Cal.Rptr. 228]) and, in this case, the more reprobative "possession of a firearm by one previously convicted of a violent offense." All are misnomers. The statute does not

---

[4]Although misdemeanor convictions or a true finding of certain enhancements satisfy subdivision (b), appellant does not argue that, because 12021.1 does not require proof of a prior *felony* conviction, article I, section 28, subdivision (f) does not apply here.

compel the prosecutor to prove that the defendant has been convicted of a felony (*People* v. *Sanchez* (1989) 211 Cal.App.3d 477 [259 Cal.Rptr. 294]), that the firearm is concealable, or, as we discuss below, that the previous offense was violent.

Under section 12021.1, subdivision (a), criminal liability for possession of a firearm attaches if the defendant has been convicted of any one of a number of offenses listed in subdivision (b). Subdivision (a) describes the offense. Subdivision (b) describes the circumstances which trigger its application. It does not appear that the use of the adjective "violent" in subdivision (b) was meant to add a requirement that the prosecutor prove that the previous offense alleged was, in fact, violent. The term "violent offense" in subdivision (b) simply provides a shorthand way of referring to a class of persons who, for purposes of subdivision (a), are unable to legally possess firearms. Other Penal Code sections specifically refer to subdivision (b). Section 139, subdivision (a), makes it a crime for members of this class to threaten a witness under certain circumstances. Section 12022.1, subdivision (b), defines an enhancement for wearing a body vest in the perpetration of the crimes on this list. A strikingly similar list appears under the designation "serious felony" in section 1192.7. Is the nature of the offense used to define the application of these sections an element of their prosecution as well?

Although the offenses listed in section 12021.1 subdivision (b) are considered violent, the statute does not require proof of the nature of the underlying conviction or enhancement. It is the fact, and not the nature, of the prior offense that forms previous conviction element of section 12021.1, subdivision (a). If a defendant is prepared to stipulate to the fact of his conviction under subdivision (b), the nature of the conviction is irrelevant.

The problem in this case arose as much from the prosecutor's word choice titling the offense in the charging document as from any analysis of the elements of the offense. In another context, our state Supreme Court observed " 'One prosecutor may content himself with pleading only essential allegations, while another may choose to include immaterial and surplus recitals. Liberty—even of habitual malefactors—is too important to depend upon the drafting technique or the pleading preferences of a particular official.' [Citation.]" (*People* v. *Crowson* (1983) 33 Cal.3d 623, 634 [190 Cal.Rptr. 165, 660 P.2d 389].) The summary title chosen by the person drafting the charging document for the offense being prosecuted should not be determinative of the information the jury receives about a defendant's past.

The trial court was correct when it first ruled that the nature of appellant's previous conviction should not be admitted at the trial. It was the duty of the

court and the district attorney to see that the charging document to be read to the jury did not contain inadmissible information. (Cf. *People* v. *Mack* (1961) 197 Cal.App.2d 574, 581 [17 Cal.Rptr. 425].)

The error, introduced during the reading of the information, was compounded by repetition. We review the evidence to determine if it is reasonably probable that appellant would have obtained a more favorable result in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Because appellant admitted committing an assault, the jury had to resolve the issues of whether appellant had a firearm at the time, whether he had the specific intent to inflict great bodily injury, and whether the victim's injuries amounted to significant or substantial physical injury as opposed to moderate injuries of a temporary nature.

At approximately 5 p.m. on October 8, 1989, appellant was washing his car in the driveway of his home in San Jose when his wife, Murika Hopkins, arrived home. Ms. Hopkins was crying and told appellant that she had just had a confrontation near Oakridge Mall with a cyclist who had accused her of cutting him off in traffic. According to Ms. Hopkins, she tried to make a right turn when the cyclist, Rudy Rascon, was trying to pass her on the right. Enraged by the incident, Rascon came over to the driver's side of Ms. Hopkins's car, slammed his hand into the window, and began shouting obscenities at her. Ms. Hopkins was five months pregnant and wearing maternity clothes. Rascon was 21 years old and appeared drunk.

As Ms. Hopkins drove away from Rascon, she could see him grabbing his crotch and "flipping [her] off." Rascon followed Ms. Hopkins. At a stop sign where cars were backed up, Rascon came even with Ms. Hopkins, put his hand into the window of her car, and shoved her face. Frightened by his behavior, Ms. Hopkins parked her car and got a tire iron out of the trunk. Rascon approached her again, and the two engaged in a shoving match. When Rascon tried to kick her, Ms. Hopkins told him she was pregnant. Rascon then told Ms. Hopkins to go home and get her husband; he would be waiting at the Oakridge Mall.

Ms. Hopkins immediately went home and told her husband. He became angry and the two got into her car and drove to Oakridge Mall. They drove around the mall until they spotted Rascon sitting on a concrete planter in front of Walgreen's Drug Store. A witness saw appellant park the car, get out, walk around to the passenger door, and retrieve a handgun from inside the car. Appellant and Ms. Hopkins approached Rascon.

Appellant and his wife testified that he did not have a gun when they were at the mall. They went up to Rascon and Ms. Hopkins said "Now say to my

husband what you said to me." Rascon stood up, pushed Ms. Hopkins in the chest, and said "Fuck you." Appellant then struck Rascon. According to Rascon, appellant pointed the gun at Rascon's side and told him to come around the corner. When Rascon refused, appellant struck him in the head with the gun.

The force of the blow knocked Rascon backward into the planter. (Police later found five .22-caliber bullets in this planter.) When Rascon sat up, appellant hit him in the head one or two more times. Appellant started to walk away while yelling at Rascon. Rascon, who was bleeding from his head, stood up and walked into Walgreen's. Appellant turned and followed Rascon into Walgreen's. Appellant was yelling at Rascon about leaving his wife alone, while Rascon was telling appellant he did not want to fight. Appellant repeatedly struck Rascon in the head while accusing him of hitting his wife. Appellant continued to hit and kick Rascon after he crumpled to the floor. Finally he left the store and drove away.

The police found Rascon unconscious or semiconscious on the floor of Walgreen's. Rascon suffered a nasal fracture, facial swelling, and a gash in the side of his head requiring six sutures. He spent one night in the hospital and, a week later a doctor pronounced the laceration "well-healed."

Appellant was arrested at his home later that evening. His wife was arrested for unrelated traffic offenses. The police searched their home but found no .22-caliber handgun. They did find boxes for one .22-caliber pistol and one .25-caliber pistol, a holster, .22- and .38-caliber ammunition, and a loaded shotgun. Later that night appellant told police that he had a .22-caliber handgun with him when he first hit Rascon. He said he put the gun away after the first blow and hit him with his bare hand. After the assault, he drove to a nearby cornfield and threw the gun away. Police searched the cornfield but were unable to find the gun.

At trial, appellant denied he had a gun in his possession at the time of the assault. Appellant admitted telling the police that he had had a gun. He explained that he did so because the police told him his wife would be charged as an accessory and kept in custody unless he told them where the gun was. As for the .22-caliber bullets police found in the planter box after the altercation, appellant said that he had been target shooting with someone else's handgun the previous day and that he still had some bullets in his jacket at the time of the assault.

What effect did telling the jury that appellant had previously been con-victed of a violent offense have on this trial? This jury faced the task of

determining whether appellant assaulted Rascon with the specific intent to commit great bodily injury. Their perception of appellant as a person with a violent background could certainly tip the scales in favor of a finding of intent. The prejudice to appellant from the revelation of a prior violent offense would color the jury's consideration of whether Rascon's stitches and nasal fracture fit the definition of great bodily injury. Finally, although appellant's denial that he possessed a handgun at the time of the assault was contradicted by both circumstantial evidence and testimony, any chance of the jury accepting his explanation was effectively extinguished by the repeated references to the nature of his past offense. Having this information come from official sources—the clerk, the bench, and the verdict form itself—may have caused even more damage than had it come from the prosecutor. It served as an official warning that the jury was being asked to pass judgment on a dangerous man. It is reasonably probable that, had the jury not been told that appellant had previously been convicted of a violent offense, the results of the trial would have been different.

Of appellant's remaining contentions, we consider it necessary to resolve only the issue concerning the admissibility of appellant's confession.[5] ▮ Appellant contends the trial court erred in refusing to suppress the confession given the night of his arrest. ▮ To obtain admission of a confession, the prosecution must prove by a preponderance of the evidence that the confession was voluntary. (*People* v. *Kelly* (1990) 51 Cal.3d 931, 947 [275 Cal.Rptr. 160, 800 P.2d 516].) On appeal, the appellate court examines the uncontradicted facts surrounding the making of the confession to determine whether the prosecution met its burden and proved that the statements were voluntarily given without previous inducement, intimidation, or threat. (*People* v. *Thompson* (1990) 50 Cal.3d 134, 166 [266 Cal.Rptr.309, 785 P.2d 857].) Where the evidence is conflicting, the appellate court must "accept that version of events which is most favorable to the People, to the extent supported by the record. [Citation.]" (*People* v. *Anderson* (1990) 52 Cal.3d 453, 470 [276 Cal.Rptr. 356, 801 P.2d 1107].)

At the hearing on the motion to suppress, appellant testified that after his wife's arrest a police officer came to him and said "We want to know about the gun." Appellant responded "How is my wife?" The officer replied "If you tell us where the gun is, I'll take care of your wife." Appellant testified that he then falsely admitted having a gun at the mall and said he had tossed it into a nearby cornfield. He testified that the only reason he made these statements was concern for his wife. Two San Jose police officers testified

---

[5]Without accepting appellant's assertion of instructional error, we would comment that upon retrial the court should make clear that CALJIC No. 9.00 applies to counts one and three as well as to the lesser included offense.

that no promises or representations were ever made to appellant regarding his wife. During the course of the hearing the court was actively involved in questioning the witnesses presented and determining if there might be other potential witnesses.

Appellant contends that in its lengthy oral ruling on this motion the trial court declined to resolve the conflicts in testimony. He contends that the trial court ruled that even assuming what appellant said was true, suppression was still not warranted. We disagree with appellant's interpretation of the court's ruling.

The court reviewed the testimony and commented "So I think that even looking at the—accepting everything that the defendant said, I think it's hard for me to conclude that there was any improper comments made by the police. It sounded to me like what the police were saying that if the situation is the way that [appellant] said it was, then there would be no factual basis on which to hold the wife. . . . But I think in considering the statements of the police officers, their blanket statement to the fact that they made no promises as to what would happen to the wife before [appellant] was interviewed . . . I think that the—I'm not convinced that the defendant's statement was involuntary."

At the conclusion of the hearing the court ruled "So, I think evaluating *all of the testimony* my conclusion is that the statements made by [appellant] were made voluntar[il]y and without any threat which would constitute a coercion of such testimony." (Italics added.)

We consider this statement by the trial court a sufficient resolution of the factual disputes presented. The trial court did not err in denying the motion to suppress.

The judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.

Capaccioli, Acting P. J., and Premo, J., concurred.