Filed 10/29/24  P. v. Britton CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL BRITTON,<br><br>    Defendant and Appellant. | A166289<br><br>(Alameda County<br>Super. Ct. No. 17-CR-032029) |

Defendant Michael Britton was convicted by a jury of second degree murder and felon in possession of a firearm.  On appeal, he contends the judgment must be reversed because the trial court: (1) erroneously allowed the jury to find he had been convicted of a prior "violent" felony, (2) made a series of errors with respect to the jury's consideration of aggravating factors on both of his convictions, and (3) erred in denying his *Marsden*[1] motion for substitute counsel.  We reject his arguments and affirm.[2]

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[2] In a related petition for writ of habeas corpus (case No. A170112), defendant argues trial counsel provided ineffective assistance.  We deny the petition today by separate order.

## BACKGROUND

At the time of the crimes, V.H., a witness, did automotive repair work at an auto shop in Oakland. He had prior convictions for robbery, felony vandalism, and unlawful possession of a firearm, and was on parole when he witnessed the shooting in this case.

On the day of the shooting, V.H. was towing a truck when he stopped at the auto shop and went inside to use the restroom. When he went back outside, he walked toward the front of the shop, talking to C.B., a co-owner of the auto body shop. V.H. heard defendant and Omar Abdallah come out of the shop, cursing at each other and having a heated argument. Defendant was holding a handgun that looked like a "nine [millimeter] with an extended clip on it" pointed toward the ground.

Defendant and Abdallah continued arguing in the middle of the parking lot. C.B. and V.H. tried to persuade defendant to put the gun away, and V.H. tried to persuade Abdallah to stop arguing. As the argument "got heated," Abdallah, who was bigger than defendant, "rushed" defendant, hit him, and knocked him on top of a Cadillac, tackling him. Abdallah was atop defendant for a few seconds and hit him three times. Abdallah then "got up off" defendant and backed up to the sidewalk. Abdallah and defendant were about six feet apart.

When defendant righted himself, he leveled his gun and shot Abdallah. V.H. saw about three or four shots.

The jury convicted defendant of second degree murder (Pen. Code, § 187, subd. (a); count one)[3] and found true a special allegation that he personally and intentionally discharged a firearm and caused great bodily injury and death to Abdallah (§§ 12022.7, subd. (a), 12022.53, subd. (d)). The

---

[3] All undesignated statutory references are to the Penal Code.

jury also found defendant guilty of possession of a firearm with a prior violent felony (§ 29900; count two).  As to each count, the jury found true three aggravating circumstances: (1) defendant's crimes involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) defendant was armed with a weapon during commission of the offense (*id*., rule 4.421(a)(2); and (3) defendant engaged in violent conduct indicating a serious danger to society (*id*., rule 4.421(b)(1).)

The trial court sentenced defendant to 15 years to life on count one, doubled due to a prior strike, plus 10 years for the firearm enhancement for a total of 40 years to life, and imposed a concurrent term totaling nine years for count two.

## DISCUSSION

### *"Violent" Prior Conviction*

Count two of the first amended information charged defendant with being a felon in possession of a firearm with a prior conviction for a *violent* felony (robbery) (§§ 29900, 211; count two).

During pretrial motions, defense counsel stated defendant would stipulate to the prior conviction.  The prosecutor insisted that defendant had to stipulate to a *violent* prior conviction because the violent nature of the prior felony was a material element of the charge.  The trial court reserved ruling on the nature of the stipulation.

Toward the end of the prosecution's case-in-chief, the court revisited whether defendant had to stipulate only to a prior conviction or a prior violent conviction.  After hearing argument from the parties, the court ruled the jury would be told that defendant stipulated to a prior conviction because "under [Evidence Code section] 352 . . . to make him admit that he has been

3

convicted of a violent felony is substantially more prejudicial than probative." The court told the parties the "public stipulation" would be that defendant was convicted of a felony but outside the presence of the jury defendant would need to stipulate he was convicted of a violent felony for purposes of the statute.

When the jury was brought back into the courtroom, the court stated "the parties are going to stipulate that [defendant] has been previously convicted of a felony. So as I told you with the other stipulations, once the parties agree to a fact, you are to conclude that that is proven and [it] is no longer up for discussion."

Before deliberations, the court orally instructed the jury as to count two consistent with its ruling: "To prove that the defendant is guilty of this crime, the People must prove that the defendant possessed a firearm; the defendant knew that he possessed the firearm; and, the defendant had previously been convicted of a felony." The court further instructed: "The defendant and the People have stipulated or agreed that the defendant has previously been convicted of a felony. That stipulation means that you must accept this fact as proved. Do not consider this fact for any other purpose. Do not speculate about or discuss the nature of that conviction." The written instructions provided to the jury, however, required the jury to find defendant guilty if he "had previously been convicted of a *violent* felony." (Italics added.) It further stated: "The defendant and the People have stipulated, or agreed, that the defendant was previously convicted of a *violent* felony. That stipulation means that you must accept this fact as proved. [¶] Do not consider this fact for any other purpose. Do not speculate about or discuss the nature of the conviction." (Italics added.) The verdict form also required the jury to find

4

defendant had been "previously convicted of a *violent* offense" as charged in count two.  (Italics added.)

Defendant contends the erroneous reference to his "violent" prior conviction on both the written jury instructions and the verdict form permitted the jury to consider evidence amounting to an "irrelevant and gratuitous attack" on his character.  Relying on *People v. Sapp* (2003) 31 Cal.4th 240 (*Sapp*), *People v. Valentine* (1986) 42 Cal.3d 170 (*Valentine*), and *People v. Hopkins* (1992) 10 Cal.App.4th 1699 (*Hopkins*), he contends the error mandates reversal of the judgment.

In *Valentine, supra,* 42 Cal.3d 170, our Supreme Court held that when a prior felony conviction is an element of an offense, the fact of the prior conviction must be proven to the trier of fact.  However, "where defendant will stipulate to ex-felon status, evidence of the *nature* of his prior convictions still may and should be withheld from the jury, since such evidence is irrelevant to the ex-felon issue."  (*Id.* at p. 173; *Sapp, supra,* 31 Cal.4th at p. 262 [The trial court has "only two options when a prior conviction is a substantive element of a current charge: Either the prosecution proves each element of the offense to the jury, or the defendant stipulates to the conviction and the court 'sanitizes' the prior by telling the jury that the defendant has a prior felony conviction, without specifying the nature of the felony committed."].)

In *Hopkins*, the defendant was convicted of several offenses, including assault with a firearm and felon in possession of a firearm under former section 12021.1.[4]  (*Hopkins, supra,* 10 Cal.App.4th at p. 1701.)  Before trial, the defendant stipulated he previously had been convicted of rape by force.  (*Ibid.*)  The trial court ruled the stipulation was sufficient to remove the

---

[4]  Section 12021.1 is the predecessor statute to section 29900.

5

nature of the prior felony conviction from the jury's consideration, but nonetheless allowed the court clerk to read the " 'title' " of the felon in possession offense as stated in the information to the jury at the beginning of the trial, including that defendant had been convicted of a violent prior offense. (*Id.* at p. 1702.) The defendant objected and asked for a mistrial, but the trial court denied the motion. At that point, the *Hopkins* court observed, defense counsel could assume any further objection would be fruitless. (*Ibid.*) At the conclusion of the prosecution's case-in-chief, the prosecutor read the stipulation to the jury that the defendant had been convicted of a "violent" offense, and when instructing the jury, the trial court reread the portion of the information referring to the defendant's prior offense as violent. Further references to defendant's violent offense were repeated "throughout" the written instructions, and the verdict form required the jury to find defendant had committed a violent offense. (*Ibid.*)

On appeal, the defendant relied on *Valentine, supra*, 42 Cal.3d 170 to argue the trial court erred when it allowed the repeated references to the nature of his prior conviction as violent. (*Hopkins, supra,* 10 Cal.App.4th at pp. 1702–1703.) The appellate court rejected the People's argument that *Valentine* did not apply because former section 12021.1, subdivision (b) required proof of the violent nature of the prior conviction as an element of the crime. (*Hopkins,* at pp. 1703–1704.) The court reasoned: "Although the offenses listed in section 12021.1, subdivision (b) are considered violent, the statute does not require proof of the nature of the underlying conviction or enhancement. It is the fact, and not the nature, of the prior offense that forms the previous conviction element of section 12021.1, subdivision (a). If a defendant is prepared to stipulate to the fact of his conviction under subdivision (b), the nature of the conviction is irrelevant." (*Id.* at p. 1704.)

6

Accordingly, the *Hopkins* court concluded the trial court had correctly ruled the nature of defendant's prior conviction should not have been admitted at trial, and "[i]t was the duty of the court and the district attorney to see that the charging document to be read to the jury did not contain inadmissible information." (*Hopkins, supra,* 10 Cal.App.4th at pp. 1704–1705.) The court also observed the error, which was "introduced during the reading of the information, was compounded by repetition." (*Id.* at p. 1705.)

Reviewing the evidence presented at trial under *People v. Watson* (1956) 46 Cal.2d 818, 836, the *Hopkins* court further concluded it was reasonably probable the defendant would have obtained a more favorable result in the absence of the error. (*Hopkins, supra,* 10 Cal.App.4th at p. 1707.) Because the defendant admitted he had committed an assault, the jury had to determine whether he had a firearm at the time, whether he had specific intent to inflict great bodily injury, and whether the victim's injuries constituted great bodily injury. (*Id.* at p. 1705.) The appellate court reasoned the revelation that defendant was a person with a prior "violent" offense "could certainly tip the scales in favor of a finding of intent." It further determined defendant would be prejudiced because the "violent" offense would color the jury's consideration of whether stitches and a nasal fracture constituted great bodily injury, and "any chance" the jury would accept the defendant's testimony denying he possessed a firearm was "effectively extinguished by the repeated references to the nature of his past offense." (*Id.* at pp. 1706–1707.)

*Hopkins* is distinguishable. Here, unlike in *Hopkins,* the fact that defendant had committed a "violent" offense was not repeated throughout the trial—indeed, the jury was never told by the judge, prosecutor, or the courtroom clerk that defendant previously committed a "violent" offense. To

the contrary, the jury was clearly and correctly orally instructed only that defendant had committed a prior offense and the jury must accept that fact as proven. Further, unlike defense counsel in *Hopkins*, who objected to the error at the beginning of trial, defense counsel in this case never alerted the court to the language in the instruction and verdict form so as to give the court an opportunity to correct it. Moreover, nothing in the record suggests such an objection would have been fruitless. Finally, unlike in *Hopkins* where the defendant testified in his own defense and admitted the underlying assault, defendant in this case did not testify and focused his defense on impeaching the credibility of the prosecution's primary percipient witness.

In any event, the apparently inadvertently included wording in the instruction and verdict form was harmless. Given the evidence presented at trial, there is no reasonable probability defendant would have received a better outcome in the absence of the error. V.H. testified defendant shot Abdallah from six feet away. This was consistent with what he had earlier told the police, namely that defendant shot Abdallah while he was on the ground, and he confirmed that at trial, as well. V.H.'s testimony was corroborated by another witness, M.C., who told police at the time of the shooting that defendant was the shooter, and by the autopsy, which showed the trajectory of one of the bullets consistent with Abdallah being on the ground. Defendant's defense, in turn, focused on impeaching the credibility of V.H. and M.C., and he did not argue the absence of malice supporting a lesser conviction.

Further, the reference to the "violent" prior offense in the jury instruction and verdict form was exceedingly brief. The nature of the offense was not mentioned, let alone emphasized, at any point during trial, including by the prosecution during closing argument. The instructions also expressly

8

told the jury not to consider the prior offense for any other purpose or to speculate about or discuss the nature of the conviction. We must, of course, presume the jury followed those instructions.[5]

In sum, given the entirety of the record here, it is not reasonably probable defendant would have achieved a better outcome in the absence of the error.

*Aggravating Factors*

Defendant contends the trial court committed several errors with respect to three aggravating factors alleged as to counts one and two that he claims "gutted" his right to due process and a fair trial. Specifically, he claims the trial court: (1) erred in allowing the prosecutor to add the allegations regarding aggravating factors to the amended information, (2)

---

[5] Although defendant concedes we generally must presume jurors follow instructions, he cites several cases in which courts have concluded an error was so prejudicial that admonitions or curative instructions could not render the error harmless. In all of those cases, however, the facts are significantly different and egregiously inflammatory inadmissible evidence was admitted during trial. (*People v. Navarrete* (2010) 181 Cal.App.4th 828, 834–835 [curative instruction could not undo damage of police officer's willful misconduct in testifying that he did not run DNA tests because of defendant's inadmissible "statement" which the jury likely understood as a confession]; *People v. Allen* (1978) 77 Cal.App.3d 924, 934–935 [rebuttal witness improperly testified defendant was on parole; examination of the record showed "an extremely close case"]; *People v. Schiers* (1971) 19 Cal.App.3d 102, 108–109, 114 [inadmissible testimony by police officer that police told defendant his lie detector test results indicated he was lying was prejudicial]; *People v. Ozuna* (1963) 213 Cal.App.2d 338, 339, 341–342 [eliciting police officer's testimony that defendant said he was an "ex-convict" was calculated misconduct by the prosecution to "prove defendant's debased character and criminal disposition" in case with no eyewitnesses and where prior conviction was "patently irrelevant to the issues" at trial]; *People v. Bentley* (1955) 131 Cal.App.2d 687, 689–690 [testimony that defendant had been suspect in prior case involving lewd conduct was prejudicial and warranted reversal].) The record here is not comparable.

failed to bifurcate the factors after being requested to do so by the defense, (3) failed to instruct the jury on factors which are assertedly unconstitutionally vague, and (4) allowed the jury to determine aggravating factors on an indeterminate sentence.

### *Additional Background*

"Senate Bill [No.] 567 [(2021–2022 Reg. Sess.)] amended Penal Code section 1170, subdivision (b)(2) (section 1170(b)(2)) to provide that, when a statute specifies three possible terms of imprisonment, the trial court cannot impose a sentence exceeding the middle term unless it finds that a longer sentence is justified by 'circumstances in aggravation of the crime' and 'the facts underlying those circumstances' have been stipulated to by the defendant or have been found true beyond a reasonable doubt by the jury at trial." (*Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 70, fn. omitted (*Chavez Zepeda*).) The statute provides generally the circumstances alleged in aggravation in the accusatory pleading "shall be bifurcated from the trial of charges and enhancements" upon the defendant's request. (§ 1170, subd. (b)(2).)

The complaint in this matter, filed before the new statute went into effect, did not allege any aggravating factors and none of the factors were alleged or proven at the preliminary examination.

On April 7, 2022, defense counsel filed motions in limine requesting defendant's prior conviction and any circumstances in aggravation be bifurcated for trial. On April 11, the prosecution filed an amended information. As to both counts one and two, the information alleged various aggravating factors pursuant to section 1170, subdivision (b) and the California Rules of Court.

10

The defense did not demur to the amendments or request they be dismissed pursuant to section 995.

At a pretrial conference, the court asked the parties about the verdict forms. Noting that the prosecutor was "asking about the [California] Rules of Court as to if there is a . . . verdict of guilty on voluntary manslaughter as well as a verdict of guilty on Count Two, possession of a firearm with a prior conviction," the court stated it had added certain California Rules of Court to "the guilty verdict if they find on that lesser charge. And I think Count Two already had those [California] Rules of Court."

The trial court then asked if there were any objections to the verdict forms. The prosecutor responded: "Not as they are currently constituted. I know [defense counsel] had made a motion to bifurcate the aggravating circumstances. It's obviously a new area of law. This is my first trial dealing with this issue. It looks like the Court has gone ahead and bifurcated some of the aggravating circumstances listed in the information, but put some on the verdict form for the jury to decide on first blush. I don't have an issue with that. I just want to put on the record that the Court has made a ruling as to some and then has denied it as to some."

The court told the parties it had bifurcated aggravating factors as to which no evidence was presented at trial, such as "his criminal record, his probation grants[,] and things of that nature." Factors "that are relevant and would be supported by the facts in the trial," on the other hand, were included on the verdict forms. The verdict forms included three aggravating factors as to both counts one and two: (1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) defendant was armed with or used a weapon at the time of

11

commission of crime (*id.*, rule 4.421(a)(2)); (3) defendant engaged in violent conduct that indicates a serious danger to society (*id.*, rule 4.421(b)(1)).

Defense counsel objected that the court could not sentence defendant on both the special allegation[6] and the aggravating factor based on use of a weapon, to which the trial court responded: "That would be a sentencing issue. That's not an issue as to whether the aggravating circumstance would be applicable or not." The prosecutor observed defendant would not be prejudiced by inclusion of the factors on the jury form, commenting "If they find that he did discharge a firearm intentionally and caused great bodily injury and death, it is not going to be prejudicial for them to also make a finding that the crime involved great violence, great bodily harm, threat of great bodily injury." Defense counsel disagreed there was no prejudice, arguing "it's highlighting certain things, and when it says here, 'A danger to society,' we object to that." Defense counsel added the allegations were "unnecessary," "duplicative," and asked that they be bifurcated. The trial court denied the motion to bifurcate, commenting: "I'm not going to have this jury come back and redeliberate on these [California] Rules of Court. That does not seem to . . . protect any right, and it would be a waste of . . . court resources, and the time with this jury."

The jury found true all three aggravating circumstances as to both counts one and two.

### *Failure to Bifurcate*

The express language of section 1170, subdivision (b)(2) states aggravating factors shall be bifurcated from trial of charges and

---

6  It appears counsel was referring to the special allegation that defendant personally and intentionally discharged a firearm resulting in great bodily injury on count one (§§ 12022.7, subd. (a), 12022.53, subd. (d)).

enhancements upon request, "*Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial. . . .*"  (Italics added; see Couzens, et al., Sentencing California Crimes (The Rutter Group 2024) ¶ 12:6 [noting exception to bifurcation requirement when evidence supporting aggravating factor is admissible to prove or defend against charged offense or enhancement].)

Here the trial court clearly stated it was not including aggravating factors for which no evidence was introduced at trial, such as those relating to defendant's criminal record or probation status, and was including only those factors as to which evidence was introduced at trial.

Thus, there was no error on this record.  The same evidence that established defendant's guilt supported the three alleged aggravating factors. To find defendant guilty of second degree murder, the jury had to find he shot and killed Abdallah.  The jury also found true the special circumstance that defendant personally and intentionally discharged a firearm.  Because the evidence supporting the charged offenses and enhancement also supported the alleged aggravating factors, the trial court was not required to bifurcate them.

Defendant does not address this express statutory exception to the bifurcation requirement in either his opening or reply brief, nor explain why it did not apply here.  Indeed, it appears trial counsel essentially agreed with the trial court's reasoning when he asserted the aggravating factors were "duplicative" of the charged offenses.  Nor has defendant shown the trial court abused its discretion in concluding judicial resources would be best preserved by denying the request to bifurcate.

***Vagueness***

13

Defendant also asserts the aggravating factor allegations were void for vagueness and violated defendant's right to fair notice. Relying on our Supreme Court's decision in *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*), defendant argues the factors contained in the California Rules of Court were developed for use by judges, not juries, and " 'partake of a certain amount of vagueness which would be impermissible if those standards were attempting to define specific criminal offenses.' " (*Id.* at p. 840.)

Division Four of this court recently rejected this argument in *Chavez Zepeda, supra,* 97 Cal.App.5th at pages 86–87. The court there held that aggravating circumstances are not rendered unconstitutionally vague by their use of undefined qualitative terms. (*Id.* at pp. 71, 86–88, 91–92.) As the *Chavez Zepeda* court explained, our Supreme Court's observation in *Sandoval*, "whether or not considered as dicta," does not condemn the submission of aggravating circumstances to a jury because the "factors do not attempt to define specific criminal offenses, and the sentencing judge's ultimate discretion [to not impose an enhanced sentence] remains a meaningful safeguard." (*Id.* at pp. 86–87.) Moreover, the *Sandoval* court's statement was made in the context of a harmless error assessment, explaining why it may be difficult for a reviewing court to conclude with confidence that a jury would make the same determination made by the trial court on an aggravating circumstance resting on a somewhat vague or subjective standard. (*Id.* at p. 87, citing *Sandoval, supra*, 41 Cal.4th at p. 840.) The *Sandoval* court did not rely on the vagueness of any of the aggravating circumstances in that case to conclude it was not convinced beyond a reasonable doubt the jury would have found the circumstances true. (*Chavez Zepeda,* at p. 87, citing *Sandoval,* at pp. 841–843.)

14

Defendant further asserts the aggravating factors are unconstitutionally vague under two United States Supreme Court decisions, *United States v. Davis* (2019) 588 U.S. 445 and *Johnson v. United States* (2015) 576 U.S. 591. Both of those cases involved construction of a residual clause in a federal criminal statute under "the 'categorical approach' " to whether a crime satisfies a particular definition, which requires a court to "disregard how the defendant actually committed his crime" and instead "imagine the idealized ' "ordinary case" ' of the defendant's crime." (*Davis*, at pp. 451–452; *Johnson*, at pp. 595–602; see *Chavez Zepeda, supra,* 97 Cal.App.5th at pp. 87–89.) Those cases do not suggest the aggravating factors at issue here are unconstitutionally vague merely because they include qualitative standards. As the *Johnson* court explained, in general the application of qualitative standards to "real-world conduct" does not raise a constitutional concern. (*Johnson,* at pp. 603–604.) Moreover, in this context, unlike in *Davis* and *Johnson,* a judge has discretion not to impose a greater sentence based on the jury's findings, "offer[ing] some protection against ' "the risk of an erroneous deprivation of [the defendant's liberty] interest" ' . . . that might attend an imprecise definition of an aggravating factor." (*Chavez Zepeda,* at p. 86; *Davis,* at pp. 449–450; *Johnson,* at p. 593.)

### *Other Challenges*

Defendant also complains the trial court in this case erred by failing to instruct the jury on the aggravating factors and the aggravating factors themselves fail "to explain to the jury when conduct that is normally part of an offense rises to the level of an 'aggravating circumstance.' " As an initial matter, it appears neither party requested or proposed jury instructions to the court, and the pattern jury instructions for these aggravating factors were developed only after trial in this case had occurred. (CALCRIM Nos.

15

3224, 3225, 3234 [new March 2023]; see *Chavez Zepeda, supra*, 97 Cal.App.5th at p. 91.) In any event, because defendant's sentence was not increased as a result of the true findings, we fail to see how he suffered any prejudice from the trial court's failure to instruct on them.

We likewise reject defendant's conclusory argument that inclusion of the aggravating circumstances on the verdict form is similar to a prosecutor engaging in misconduct by urging a jury *in closing argument* "to convict a defendant 'in order to protect community values, preserve civil order, or deter future law breaking.'" Defendant cites to *United States v. Sanchez* (9th Cir. 2011) 659 F.3d 1252, 1256–1257 in support of this argument. But *Sanchez* concerned a prosecutor's improper closing argument inviting the jury to convict the defendant in that case for reasons wholly irrelevant to his guilt or innocence and based on the "'potential social ramifications' of the verdict"— that if the jury acquitted it would send a message to drug couriers to use the same defense in other cases and lead to increased lawbreaking in general. The prosecutor's statement in that case "did not merely comment on the evidence and arguments in the case, but also 'appeal[ed] to the passions, fears and vulnerabilities of the jury' by suggesting that an acquittal would make it easier for drugs to come into the United States." (*Id.* at p. 1257.) Inclusion of statutorily authorized aggravating circumstances on the verdict form is not remotely analogous to the improper argument in *Sanchez*. Nor did it "'"present 'irrelevant information or inflammatory rhetoric that divert[ed] the jury's attention from its proper role.'"'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894.)

We likewise reject defendant's argument the trial court erred by allowing the jury to determine aggravating factors on count one because first and second degree murder are subject to indeterminate sentences and section

16

1170, subdivision (b) applies only to determinate sentences. As the trial court stated when making its ruling, the aggravating factors would be relevant for sentencing purposes as to count one if the jury reached a guilty verdict on the lesser charge of voluntary manslaughter. As noted above, the jury was instructed on voluntary manslaughter as a lesser included offense on count one.

### *Defendant Was Not Prejudiced*

In any event, even assuming the trial court erred in any of the ways defendant claims in handling the aggravating factors, any error was harmless.

Defendant maintains he was prejudiced because the jury's attention was diverted from the charged offenses and allowed them to more easily reach their verdict. But that assertion is entirely speculative and he points to nothing in the record supporting it. Indeed, because the evidence supporting the charged offenses and enhancement overlapped with the evidence supporting the aggravating factors, it is unlikely the jury spent much time resolving the aggravating factors once they determined defendant was guilty of second degree murder and personally and intentionally discharged a firearm in the commission of the offense. Furthermore, the aggravating factors submitted to the jury were not used to elevate his sentence. Defendant received an indeterminate sentence for second degree murder on count one, and a concurrent midterm sentence on count two for possession of a firearm by a felon.

In sum, defendant has not shown the aggravating factors were used to establish his guilt or increase his punishment and therefore has not shown any harm from their inclusion of the verdict forms.

**Marsden *Motion***

Defendant contends the trial court should have granted his *Marsden* motion because defense counsel failed to pursue an assertedly viable self-defense strategy due to counsel's misunderstanding of the law and inaccurate legal advice to defendant. Defendant further contends the trial court erred in denying the *Marsden* motion based in part on an ex parte communication that took place in chambers.

" 'When a defendant seeks substitution of appointed counsel pursuant to [*Marsden, supra*,] 2 Cal.3d 118 . . . , "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' " (*People v. Ng* (2022) 13 Cal.5th 448, 500 (*Ng*).) We review the denial of a *Marsden* motion under the abuse of discretion standard. (*Ibid.*)

### *Additional Background*

During closing argument, defense counsel did not argue self-defense and instead focused on the prosecution's failure to meet its burden to show that appellant committed the offenses. After closing argument and outside the jury's presence, defense counsel stated he wanted to put something on the record. In front of the judge and prosecutor, defense counsel asked defendant, "you had told me before argument that you did not want me to admit that you did any shooting; is that correct?" Defendant responded, "Not admit. I just didn't want you to—it's not about admitting anything." Defense counsel clarified, "You indicated that you didn't shoot or did anything like that," to which defendant responded, "Exactly. That was my problem."

18

A discussion was then held off the record, after which the trial court asked defense counsel in open court, outside the jury's presence: "It's my understanding, [defense counsel], based on what you told us in chambers, is that your client wanted to focus on sort of a reasonable doubt type of argument, not concede that he might have been the shooter, but that he acted in self-defense as an example."[7] Defense counsel confirmed that was correct. Defendant then stated: "I don't understand anything that's going on. Do you want to explain?" Defense counsel asked defendant: "You did not wish for me to make a manslaughter argument; is that correct?" Defendant responded: "That is correct, because I'm innocent."

At sentencing, defendant made an oral *Marsden* motion. He asserted the motion was "due to the fact that I asked my attorney to file certain paperwork before this, before we got here, and he has failed to communicate with me or attempt to file that paperwork." The court cleared the courtroom and held a *Marsden* hearing.

Defendant raised several complaints about his attorney: (1) he did not file a new trial motion; (2) he failed to introduce exculpatory evidence; (3) he failed to recall a witness to the stand for further cross-examination; (4) he was deemed unqualified to represent a client in a murder trial in the past; (5) he told defendant's family that the trial is an "act" and counsel was the "lead actor"; (6) he failed to connect defendant with the private investigator and did "zero preparation" for trial; and (7) he stated on the record that defendant did not want to admit he shot anyone and defendant felt "that was very incriminating in itself."

---

[7] It is unclear from the record whether the prosecutor was in the conference held in chambers, but defendant contends he was.

After confirming defense counsel had been practicing criminal law for 40 years and had handled in excess of 100 murder cases, the court asked defense counsel to respond to defendant's complaints. Counsel responded first to defendant's "last issue," stating: "when we first started talking about this case I told him I thought this was a manslaughter, that he should take the stand in spite of his 211 conviction and tell the Court, tell the jury about Mr. Abdallah, who is a bigger person, fighting him and that he was concerned for his own safety and that he shot in self-defense." Defense counsel said defendant told him, "[i]n no uncertain terms," that "he did not shoot that man and don't say he did." Defense counsel reiterated that "[t]hroughout the whole pendency of this case," defendant "specifically told [counsel] [he] didn't shoot that man and don't say [he] shot that man." Defense counsel then told the court that he told defendant he "thought [the case] could try to a manslaughter, but two things had to happen: One, he had to admit to the shooting and two, that he—I thought he needed to take the stand in order to say that. He said no." Defense counsel told the court he "stayed away" from admitting defendant shot Abdallah because he "had steadfastly, absolutely said don't tell anybody I shot that man. [He] didn't shoot him." Defense counsel then said: "I have asked him since day one if you didn't shoot him, who did? I never got an answer to that. I can't say. Things are going on out there. I can't talk about that. [¶] I said well, then. . . ."

At that point, defendant interjected: "That's not how it went." The trial court told defendant: "Hold on. I'll give you further opportunity to respond. . . ." Defense counsel then said, " That's [*sic*] to that. In fact, I told the Court that."

The court responded: "You did. I recollect not as much detail as you're providing this morning but I remember you telling the Court when we were

20

discussing either jury instructions or at some phase of the proceedings that [defendant] was not willing to or did not want you to argue self-defense because his position was that he was not the shooter, so self-defense was not a legitimate argument." Defense counsel responded, "Thank you. That's correct."

The court then gave defendant an opportunity to respond. Defendant told the court "when [counsel] told me it was self-defense, I said well, we have to be able to present my self-defense evidence," and defendant felt defense counsel "needed to present Dwayne Edwards's testimony in the trial." When the court asked who Dwayne Edwards was, defense counsel and defendant explained defendant got into Edwards's car after the shooting. Defendant thought Edwards could testify to what defendant was saying and how defendant was conducting himself after the shooting. Defense counsel did not think Edwards's testimony would be exculpatory because he did not see the shooting. Defendant also told the court he wanted counsel to call C.B. as a witness and that he and defense counsel had a hard time communicating because the phone connection was poor.

Defendant also raised another complaint—that defense counsel told him the prosecution offered a 16-year determinate term for manslaughter, but in fact the prosecution never made such an offer. Defendant thought defense counsel "had another case in mind." When the court asked defendant to clarify if the prosecutor had offered defendant "a voluntary manslaughter determinant term of 16 years," defendant explained, "That's what I was told by [defense counsel] but come to find out, that never took place."

The trial court addressed defendant's complaints at length. Specifically, with regard to the incorrect information that a plea deal was available, the court stated that even if counsel made a mistake in telling

21

defendant about a nonexistent offer, that did not amount to ineffective assistance. When defendant asked the court about defense counsel making statements on the record without explaining to his client what was going on, the court responded: "[Defense counsel] never said anything to the jury to the extent that my guy won't let me argue self-defense. He told us without the jury present that he was not going to be pursuing a self-defense argument because you specifically did not want him to."

The court denied the *Marsden* motion, ruling: "I do not find that there's been a sufficient showing that [defense counsel's] representation of defendant has been inadequate, nor do I find that defendant [and] counsel have had such irreconcilable conflict in the relationship that ineffective representation was the result." The court specifically stated defense counsel had "adequately discussed the case with [defendant], and . . . did an excellent job at trial pursuing . . . the legal arguments that [defendant] wanted him to pursue." The court concluded "that the disagreements amounted to nothing . . . more than tactical disagreements that do not constitute irreconcilable conflicts and do not substantially impair your right to counsel. It did not cause and will not likely to cause [*sic*] ineffective representation."

### *Denial of the Motion Was Not an Abuse of Discretion*

Defendant asserts the trial court erred in denying the *Marsden* motion because defense counsel rendered ineffective performance by failing to pursue a self-defense strategy at trial. He further contends counsel incorrectly advised defendant he had to testify and admit he shot Abdallah in order to obtain a manslaughter or not guilty verdict, and counsel's ignorance of the law on this point amounted to ineffective assistance.

As an initial matter, we reject these claims on appeal because defendant did not raise them with the trial court.[8] (*People v. Abilez* (2007) 41 Cal.4th 472, 489 [issue not raised during *Marsden* hearing "cannot be used to undermine the trial court's exercise of discretion in denying the motion"].) As explained above, defendant raised a number of complaints at the *Marsden* hearing, but at no point did he tell the court counsel pursued the wrong legal strategy or incorrectly advised him he had to testify.

Defendant appears to suggest *on appeal* that he impliedly claimed in the trial court that he had wanted counsel to pursue a self-defense strategy because he wanted to call Dwayne Edwards "to present his 'self-defense evidence.'" However, complaining that counsel did not call a witness is not tantamount to a complaint that he wanted to pursue, and counsel should have pursued, a self-defense defense. Nor would such a complaint establish ineffective assistance of counsel in any event. (See, e.g., *People v. Welch* (1999) 20 Cal.4th 701, 728 ["A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense."]; *People v. Penrod* (1980) 112 Cal.App.3d 738, 750 [decision to call witnesses is ordinarily a trial tactic within the attorney's control].) As defense counsel told the court, Edwards would not have provided exculpatory evidence because he did not witness the shooting.

Nor is there merit to defendant's claim that his attorney misunderstood his obligations under *McCoy v. Louisiana* (2018) 584 U.S. 414. In *McCoy*, the United States Supreme Court held the Sixth Amendment guarantee of the

---

[8] Defendant's request for judicial notice of an unrelated, decades-old disciplinary matter involving defense counsel, filed for the first time with his reply brief, is denied. The material sought to be noticed was not before the trial court when it ruled on the *Marsden* motion and is irrelevant to the issues raised at the hearing.

right to the assistance of counsel precluded defense counsel, in that case, from admitting defendant committed three murders over the defendant's strenuous and consistent objection. (*McCoy,* at pp. 417, 422–424.) As the high court explained, "Autonomy to decide that the objective of the defense is to assert innocence" belongs to the category of decisions reserved to the client. (*Id.* at p. 422.) Thus, "[w]hen a client expressly asserts that the objective of '*his* defen[s]e' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." (*Id.* at p. 423.) The high court emphasized the importance of express statements by the client regarding the right to control the objective of the defense. "If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way." (*Id.* at p. 424; *People v. Bloom* (2022) 12 Cal.5th 1008, 1039–1042 [counsel's concession that the defendant killed two victims, over the defendant's express objection, in order to argue for lesser included offenses on first degree murder charge was structural error under *McCoy*]; *People v. Flores* (2019) 34 Cal.App.5th 270, 279–282 [counsel's reasonable legal strategy to concede actus reus of charged crimes violated defendant's right to maintain innocence of those acts as objective of his defense]; *People v. Eddy* (2019) 33 Cal.App.5th 472, 481–482 [trial counsel committed *McCoy* error when he knew client wanted innocence defense but conceded client was guilty of manslaughter as lesser included offense of murder].)

Here, defense counsel explained at the *Marsden* hearing he did not pursue a self-defense strategy because defendant repeatedly insisted he "did not shoot that man" and instructed counsel not to say he did. Indeed, as

counsel told the trial court at the hearing, after he had cross-examined the pathologist about the position of the body at the time of the shooting, defendant asked counsel, "Why did you ask about all of that? I didn't shoot that man." Moreover, after closing argument defendant confirmed on the record outside the jury's presence that "[his] problem" was he did not do the shooting and he did not want counsel to argue a manslaughter theory because he is innocent. Defendant does not explain how counsel could argue for self-defense when defendant vehemently maintained his factual innocence of the charged acts.

Defendant now argues he was not intransigent about his rejection of a self-defense strategy, because he (1) suggested a self-defense witness and (2) was willing to accept the nonexistent 16-year manslaughter plea deal. At the *Marsden* hearing, however, when given an opportunity to respond to defense counsel's explanation of his trial strategy, defendant did not dispute that he told counsel he "did not shoot that man" and not to say he did.[9] Rather, defendant told the court he wanted Dwayne Edwards to testify to a statement to the police that Edwards did not see a weapon on defendant after the shooting and saw another person leaving the scene behind him. But this testimony does not support a *self-defense* theory. As for the supposed plea deal, defendant complained "[t]here was never an offer" and counsel had confused him with another client, *not* that he wanted counsel to pursue a different defense theory at trial.

Defendant further contends *on appeal* that defense counsel's advice he had to testify and admit he was the shooter to present a manslaughter

---

        9  To the extent defendant's claim rests on a credibility question between defendant and his counsel, the court was " ' "entitled to accept counsel's explanation." ' " (*People v. Rices* (2017) 4 Cal.5th 49, 69.)

defense was wrong as a matter of law, and that counsel's ignorance of that point amounts to ineffective assistance.  Not only was this specific complaint not raised by defendant at the *Marsden* hearing, but the argument is disingenuous.  Defense counsel's statement to his client that he "*thought*" the case "could try to a manslaughter" but defendant "had to admit to the shooting" and "needed to take the stand in order to say that" suggests that in his professional judgment, a manslaughter defense would not be effective unless defendant testified.  (Italics added.)  There is no basis in the record to conclude counsel's advice was based on ignorance of the law as opposed to a reasonable tactical decision.  (*People v. Dickey* (2005) 35 Cal.4th 884, 922 ["We do not find *Marsden* error where complaints of counsel's inadequacy involve tactical disagreements."].)

Defendant also contends defense counsel violated his duty of confidentiality under Business and Professions Code section 6068, subdivision (e)(1) and California Rules of Professional Conduct, rule 1.6(a) when he revealed attorney client communications in chambers and "in open court."  Defendant maintains that "disloyal action . . . certainly created a toxic environment where the attorney placed his needs above, and in conflict with, [defendant's needs]."

Even if defense counsel's initial disclosure of his client's confidences to the court and prosecutor immediately following closing argument violated his professional duties, defendant has not shown how his right to effective assistance of counsel was impaired by his attorney's continued representation.  (*Ng, supra*, 13 Cal.5th at p. 500 [denial of a *Marsden* motion is not abuse of discretion unless defendant has shown failure to replace counsel " ' "would substantially impair the defendant's right to assistance of counsel" ' "].)

We do not condone defense counsel's apparently preemptive disclosure of his client's confidential communications prior to the *Marsden* hearing without his client's informed consent. Under well-established California law, there appears to be no dispute defense counsel was prohibited from revealing confidential information provided by defendant when he first did. (Evid. Code, §§ 952, 954; Bus. & Prof. Code, § 6068, subd. (e)(1) [attorney has a duty to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"]; Rules Prof. Conduct, rule 1.6(a) [lawyer shall not reveal information protected from disclosure by Bus. & Prof. Code, § 6068, subd. (e)(1)].) Defendant does not dispute, however, that his attorney could reveal confidential communications when defendant challenged his professional competence. (See, e.g., *People v. Henning* (2009) 178 Cal.App.4th 388, 404 [attorney has obligation to respond to apparently meritorious ground for *Marsden* motion]; Levenson & Ricciardulli, Cal. Practice Guide: Criminal Procedure (The Rutter Group 2023) ¶ 1:37 [noting *Marsden* hearing may require disclosure of attorney-client privileged communications].) We therefore fail to see how defendant was prejudiced by his attorney's disclosure to the court and prosecutor after closing arguments and outside the jury's presence.

In his reply brief, defendant argues for the first time that defense counsel's disclosure of the client confidence "relieve[d] the prosecutor of his burden of proof by allowing him to focus his closing argument solely on the crime of murder and not have to explain why the killing in this case was not something less, i.e., manslaughter or self-defense." But both the in chambers conversation and counsel's statements on the record occurred *after* closing arguments while the jury was already deliberating and thus had no effect on the prosecutor's burden.

27

We similarly reject defendant's claim the trial court erred because it based its ruling in part on an ex parte communication. Defendant asserts the trial court relied on " 'evidence' " from the in-chambers conversation among the judge, prosecutor, and defense counsel without defendant present and during which defense counsel revealed confidential attorney client communications. In support of this argument, defendant cites to the trial court's statement at the *Marsden* hearing that the court remembered defense counsel telling the court either during "jury instructions or at some phase of the proceedings" that defendant did not want counsel to argue self-defense because defendant did not want to admit he was the shooter. Defendant then points to the trial court's statement on the record summarizing what defense counsel told the court in chambers.[10] (Cf., *People v. Hill* (1983) 148 Cal.App.3d 744, 754–755 [denial of *Marsden* motion was error where trial court expressly relied on "ex parte, off-the-record discussions" with defense counsel to investigate defendant's complaints].)

However, defendant fails to demonstrate error. The court did not say it was relying on anything said in chambers when it ruled on the *Marsden* motion.[11] (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [judgment is presumed correct and " 'error must be affirmatively shown' "].) Moreover, the purported subject of the ex parte communication concerned

---

[10] The court said on the record at that time: "It's my understanding, [defense counsel], based on what you told us in chambers, is that your client wanted to focus on sort of a reasonable doubt type of argument, not concede that he might have been the shooter, but that he acted in self-defense as an example."

[11] Indeed, the trial court specifically told defense counsel: "I recollect *not as much detail as you're providing this morning*," suggesting counsel's explanation of his defense strategy at the *Marsden* hearing was more thorough than anything the court remembered from the trial. (Italics added.)

defense counsel's explanation that he did not argue self-defense because defendant did not want to admit shooting Abdallah. That issue was thoroughly discussed on the record at the *Marsden* hearing and defendant had an opportunity to respond to counsel's statements.

In sum, defendant has failed to show any error or abuse of discretion in the denial of his *Marsden* motion.[12]

## DISPOSITION

The judgment is AFFIRMED.

---

[12] Given our conclusions as to defendant's claims of error, we likewise reject his argument reversal is required for claim of "cumulative error." (See *People v. Thomas* (2021) 64 Cal.App.5th 924, 971 [" 'The "litmus test" for cumulative error "is whether defendant received due process and a fair trial." ' "].)

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Langhorne Wilson, J.

A166289, People v. Britton

30